Citation Nr: 1045635 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 06-31 981A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, 
Georgia


THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to service connection for bilateral bunions, to 
include as secondary to the service-connected right and left knee 
disorders.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans 
Services


WITNESS AT HEARING ON APPEAL

The Veteran




ATTORNEY FOR THE BOARD

A. C. Mackenzie, Counsel


INTRODUCTION

The Veteran served on active duty from January 1973 to July 1975.

This matter comes before the Board of Veterans' Appeals (Board) 
on appeal from a May 2007 rating decision issued by the Atlanta, 
Georgia Department of Veterans Affairs (VA) Regional Office (RO). 
The Board remanded this case in April 2010, following a February 
2010 Travel Board hearing.

The claim for service connection for bilateral bunions is 
addressed in the REMAND portion of the decision below and is 
REMANDED to the RO via the Appeals Management Center (AMC), in 
Washington, DC.


FINDING OF FACT

The competent medical evidence of record does not establish that 
the Veteran's claimed hypertension was manifested in service or 
within one year thereafter, and there is no competent medical 
evidence otherwise linking it to service.


CONCLUSION OF LAW

Hypertension was not incurred in or aggravated by service, nor 
may it be presumed to have been incurred in service. 38 U.S.C.A. 
§§ 1110, 1112, 1113, 1131, 5103, 5103A, 5107 (West 2002 & Supp. 
2010); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Entitlement to service connection for hypertension

Service connection may be granted for a disability resulting from 
disease or injury incurred in or aggravated by service. 38 
U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection 
requires competent evidence showing: (1) the existence of a 
present disability; (2) in-service incurrence or aggravation of a 
disease or injury; and (3) a causal relationship between the 
present disability and the disease or injury incurred or 
aggravated during service. Shedden v. Principi, 381 F.3d 1163, 
1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 
(1995). For the showing of chronic disease in service, there is 
required a combination of manifestations sufficient to identify 
the disease entity and sufficient observation to establish 
chronicity at the time. If chronicity in service is not 
established, a showing of continuity of symptoms after discharge 
is required to support the claim. 38 C.F.R. § 3.303(b). Service 
connection may also be granted for any disease diagnosed after 
discharge when all of the evidence establishes that the disease 
was incurred in service. 38 C.F.R. § 3.303(d). 

Also, certain chronic diseases, including hypertension, may be 
presumed to have been incurred during service if manifested to a 
compensable degree within one year of separation from active 
military service. 38 U.S.C.A. §§ 1112, 1113, 1137; 38 C.F.R. 
§§ 3.307, 3.309. 

The Board has reviewed the Veteran's service treatment records 
and finds no evidence of complaints of, or treatment for, 
hypertension. All in-service blood pressure readings showed 
systolic pressure well below 160mm. and diastolic blood pressure 
well below 90mm. See 38 C.F.R. § 4.104, Diagnostic Code 7101, 
note 1 (indicating that the term "hypertension" means that 
diastolic blood pressure is predominantly 90mm. or greater, and 
isolated systolic hypertension means that the systolic blood 
pressure is predominantly 160mm. or greater with a diastolic 
blood pressure of less than 90mm.).

Subsequent to service, a November 1975 VA treatment record shows 
a blood pressure reading of 130/90. Subsequent blood pressure 
readings included 110/74 in August 1976; 134/90 in June 1977; and 
120/90, 122/90, and 120/80 in August 1977. A diagnosis of 
essential hypertension was later made in a report of VA 
hospitalization from February to May of 1985.

The Veteran underwent a VA hypertension examination in May 2010, 
with an examiner who confirmed reviewing the claims file. This 
examiner made a chart of the Veteran's post-service blood 
pressure readings. The Board notes that the examiner listed and 
referred to a blood pressure reading of 130/90 on October 13, 
1975 in the examination report, including the explanation of the 
medical opinion expressed therein. The copy of handwritten VA 
treatment records in the claims folder, however, shows a blood 
pressure reading of 130/90 on November 13, 1975, not October 13, 
1975. The Board concludes, however, that the difference of one 
month in the treatment record and examination report does not 
make a material difference in the analysis of the examiner, as 
both would be within the initial post-service year and the 
examiner clearly indicated that the one blood pressure reading 
would not support a diagnosis of hypertension. The examiner 
indicated the gap between the one late 1975 reading and the 
elevated readings beginning in June 1977. The examiner also 
noted the Veteran's history of alcohol consumption and cocaine 
use since service and his 15 years of smoking cigarettes, having 
quit about a month prior to the examination. In rendering a 
medical opinion, the examiner noted that the claims file was 
"quite clear" in that no diagnosis or treatment for 
hypertension occurred on entry or during active service. 
Moreover, the examiner noted that the first elevated blood 
pressure reading was "on 10/13/75 (130/90)" and in-and-of 
itself did not constitute a diagnosis of hypertension. Rather, 
the examiner noted that the diagnosis of hypertension could only 
be made as of August 1977. Subsequent blood pressure readings 
were noted to vary from normal to hypertensive. Given the 
Veteran's history of substance use, combined with normal blood 
pressure readings upon enlistment and post-military, the logical 
conclusion was that hypertension was related to substance use. 
The examiner noted that cocaine, alcohol withdrawal, and nicotine 
all typically raise blood pressure. In conclusion, the examiner 
assessed hypertension, more likely than not related to use of 
substances, and noted that this diagnosis appeared to have been 
made in August 1977, with the first abnormal reading "on 
10/13/75."

In this case, there is no competent evidence of record indicating 
that the Veteran had a diagnosis of hypertension in service or 
within one year thereafter. The only blood pressure reading from 
this period, from November 1975, is not accompanied by a 
diagnosis of hypertension or any indication of repeated blood 
pressure readings as would suggest a diagnosis of hypertension. 
See 38 C.F.R. § 4.104, Diagnostic Code 7101, Note 1. Moreover, 
the VA examiner specified that the one blood pressure reading 
would not constitute a diagnosis of hypertension, citing to the 
Seventh Report of the Joint National Committee on Prevention, 
Detection, Evaluation, and Treatment of High Blood Pressure (JNC 
7). The only medical opinion of record addressing the date of 
onset of hypertension is the May 2010 VA examination report, 
which places the date of onset at August 1977, more than two 
years following separation from service. The Board would also 
point out that, although the examiner noted alcohol and drug use 
since service and linked hypertension to such use, VA laws and 
regulations provide that compensation shall not be paid if the 
claimed disability is the result of the person's own willful 
misconduct or abuse of alcohol or drugs. 38 U.S.C.A. §§ 105, 
1110; 38 C.F.R. §§ 3.1(n), 3.301(c). Neither this examiner nor 
any other treatment provider otherwise indicated a causal 
connection between the onset of hypertension and service. 

The Board has considered the Veteran's assertions of hypertension 
dating back to either service or the one-year period thereafter. 
The Board is aware that lay statements may be sufficient to 
establish a medical diagnosis or nexus. See Davidson v. 
Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In ascertaining 
the competency and probative value of lay evidence, recent 
decisions of the United States Court of Appeals for Veterans 
Claims (Court) have underscored the importance of determining 
whether a layperson is competent to identify the medical 
condition in question. As a general matter, a layperson is not 
capable of opining on matters requiring medical knowledge. See 
38 C.F.R. § 3.159(a)(2). In certain instances, however, lay 
evidence has been found to be competent with regard to a disease 
with "unique and readily identifiable features" that is 
"capable of lay observation." See Barr v. Nicholson, 21 Vet. 
App. 303, 308-09 (2007) (concerning varicose veins); see also 
Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a 
dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 
(2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) 
(flatfoot). That notwithstanding, a Veteran is not competent to 
provide evidence as to more complex medical questions and, 
specifically, is not competent to provide an opinion as to 
etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 
456, 462 (2007) (concerning rheumatic fever); see also Routen v. 
Brown, 10 Vet. App. 183, 186 (1997) ("a layperson is generally 
not capable of opining on matters requiring medical knowledge"). 

In the present case, as indicated in Diagnostic Code 7101, 
hypertension involves the cardiovascular system and is diagnosed 
based upon blood pressure testing. It is emphatically not a 
disability that is capable of lay observation, such as varicose 
veins or tinnitus. Rather, it is far more analogous to rheumatic 
fever, as a disease involving internal organs. For that reason, 
the Veteran's lay opinion, even if considered credible, does not 
constitute competent evidence and is of no probative value. See 
Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006).

Overall, the preponderance of the evidence is against the 
Veteran's claim for service connection for hypertension, and this 
claim must be denied. In reaching this determination, the Board 
acknowledges that VA is statutorily required to resolve the 
benefit of the doubt in favor of the Veteran when there is an 
approximate balance of positive and negative evidence regarding 
the merits of an outstanding issue. That doctrine, however, is 
not applicable in this case because the preponderance of the 
evidence is against the Veteran's claim. See Gilbert v. 
Derwinski, 1 Vet. App. 49, 55 (1990); 38 U.S.C.A. § 5107(b).

II. Duties to notify and assist

VA's duties to notify and assist claimants in substantiating a 
claim for VA benefits are found at 38 U.S.C.A. §§ 5100, 5102, 
5103, 5103A, 5107, 5126 and 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 
3.326(a). See also 73 Fed. Reg. 23,353-23,356 (April 30, 2008) 
(concerning revisions to 38 C.F.R. § 3.159). Upon receipt of a 
complete or substantially complete application for benefits, VA 
is required to notify the claimant and his or her representative, 
if any, of any information, and any medical evidence or lay 
evidence that is necessary to substantiate the claim. 38 
U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. 
Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. 
§ 3.159(b)(1), proper notice must inform the claimant of any 
information and evidence not of record (1) that is necessary to 
substantiate the claim; (2) that VA will seek to provide; and (3) 
that the claimant is expected to provide. 

In this case, notice fulfilling the requirements of 38 C.F.R. § 
3.159(b) was furnished to the Veteran in letters issued in 
December 2006 and March 2007, prior to the date of the issuance 
of the appealed rating decision. By these letters, the Veteran 
was also notified of VA's practices in assigning disability 
evaluations and effective dates for those evaluations. See 
Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). The 
elements of the claim on appeal, as well as the types of evidence 
that would contain pertinent findings, were further addressed 
during the February 2010 hearing. See Bryant v. Shinseki, 23 
Vet. App. 488 (2010). 

VA has also fulfilled its duty to assist in obtaining the 
identified and available evidence needed to substantiate the 
claim adjudicated in this decision. VA has obtained records 
corresponding to all treatment described by the Veteran, 
including VA and Social Security Administration records. 
Additionally, the Veteran was afforded a VA examination in May 
2010 that was fully adequate for the purposes of ascertaining the 
nature and etiology of his claimed hypertension. See Barr v. 
Nicholson, 21 Vet. App. 303 (2007). Insofar as the VA 
examination addressed the questions posed in the April 2010 
remand, there has been full compliance with the remand 
instructions. See Stegall v. West, 11 Vet. App. 268, 270-71 
(1998). 

Overall, there is no evidence of any VA error in notifying or 
assisting the Veteran that reasonably affects the fairness of 
this adjudication.


ORDER

Entitlement to service connection for hypertension is denied.


REMAND

The Court has determined that a remand by the Board confers upon 
a claimant, as a matter of law, the right to compliance with 
remand orders. See Stegall v. West, supra.

In the April 2010 remand, the Board requested a VA examination to 
address whether the Veteran's bilateral bunions were 
etiologically related to service or were caused or permanently 
worsened by his service-connected right and left knee disorders. 
The Board further specified that a complete rationale was to be 
provided for all opinions and conclusions expressed by the 
examiner.

In May 2010, the Veteran underwent a VA feet examination, and the 
examiner did provide etiology opinions in the examination report. 
The examiner, however, offered no rationale or other explanation 
for those opinions in the report. It is not at all apparent to 
the Board how the examiner reached his opinions. In the absence 
of such a rationale, the requested opinions have not been 
provided in accordance with the April 2010 remand instructions. 
Pursuant to Stegall, the examination report must be returned to 
the examiner (or another medical professional) for completion of 
the opinions, to include a detailed rationale.

Accordingly, the case is REMANDED for the following action:

1. The Veteran's claims file should be 
returned to the examiner who conducted the 
May 2010 VA feet examination, or another 
medical professional if that an examiner is 
unavailable, for an amended opinion as to 
whether it is at least as likely as not 
(e.g., a 50 percent or greater probability) 
that the Veteran's bilateral bunions were 
etiologically related to service, or were 
caused or permanently worsened by his 
service-connected right and left knee 
disorders. 

It is essential that this opinion be 
supported by a complete and thorough 
rationale, taking into account the 
examination findings from May 2010, the 
evidence contained in the claims file, and 
the Veteran's own lay contentions.

2. After reviewing the amended etiology 
opinions to ensure that the Board's remand 
instructions have been fully complied with, 
the claim for service connection for 
bilateral bunions, to include as secondary to 
the service-connected right and left knee 
disorders, must be readjudicated. If the 
determination remains unfavorable, the 
Veteran and his representative must be 
furnished with a Supplemental Statement of 
the Case before this case is returned to the 
Board.

The appellant has the right to submit additional evidence and 
argument on the matter or matters the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals for 
Veterans Claims for additional development or other appropriate 
action must be handled in an expeditious manner. See 38 U.S.C.A. 
§§ 5109B, 7112 (West Supp. 2010).



______________________________________________
MARY GALLAGHER
Veterans Law Judge, Board of Veterans' Appeals



 Department of Veterans Affairs