Citation Nr: 1331566 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 99-08 699A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for bilateral lower extremity neuropathy.

2. Entitlement to service connection for hypertension

3. Entitlement to an evaluation in excess of 10 percent for the service-connected lumbar paravertebral myositis from August 1998 to May 6, 2004.

4. Entitlement to an evaluation in excess of 20 percent for the service-connected lumbar paravertebral myositis from May 7, 2004 to February 8, 2007.

5. Entitlement to an evaluation in excess of 40 percent for the service-connected lumbar paravertebral myositis from February 9, 2007.

6. Entitlement to an effective date earlier then June 14, 2003 for the award of service connection for a left knee disorder, to include whether there was clear and unmistakable error in a prior denial of service connection.


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


WITNESS AT HEARINGS ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

L. M. Barnard, Senior Counsel


INTRODUCTION

The Veteran served on active duty from January 1966 to January 1968.

This appeal arose before the Board of Veterans' Appeals (Board) from various rating actions issued by the San Juan, the Commonwealth of Puerto Rico, Department of Veterans Affairs (VA), Regional Office (RO). In November 1998, the RO had denied entitlement to an evaluation in excess of 10 percent for the Veteran's service-connected lumbar paravertebral myositis. The Veteran testified at a RO hearing in May 2004; a transcript has been associated with the claims folder. In an August 2004 rating action, the disability evaluation was increased to 20 percent, effective May 7, 2004. The Veteran then testified before the undersigned at a personal hearing conducted at the RO in May 2005; a transcript of this hearing has been included in the claims folder. In July 2006, this claim was remanded to the RO for additional development. In April 2007, the RO issued a decision, which increased the evaluation assigned to the lumbar paravertebral myositis to 40 percent, effective February 9, 2007. The Board remanded the increased rating claim in November 2009. This remand also instructed that a SOC be issued concerning the issue of an earlier effective date for service connection for a left knee disability and that a CUE claim be referred for initial adjudication. In February 2012, the RO readjudicated the claim for an increased evaluation for the lumbar paravertebral myositis in a supplemental statement of the case (SSOC). This claim has been returned to the Board for further appellate consideration.

The RO also issued a rating action in August 2010 that denied the Veteran's claims for service connection for bilateral lower extremity neuropathy and for hypertension.

The issue of entitlement to an earlier effective date for the award of service connection for post traumatic stress disorder has been raised by the record, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 

The issues of entitlement to an increased staged evaluation for the service-connected lumbar paravertebral myositis, entitlement to service connection for bilateral lower extremity neuropathy and entitlement to an effective date earlier than June 14, 2003 for the award of service connection for a left knee disorder, to include whether there was clear and unmistakable error in a prior denial of service connection are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

Hypertension was not present in service, nor was it present to a compensable degree within one year of the Veteran's separation from service.




CONCLUSION OF LAW

Hypertension was not incurred in or aggravated by service, nor may it be presumed to have been so incurred. 38 U.S.C.A. §§ 1110, 1111, 1112, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307, 3.309 (a) (2013).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

VCAA

The VCAA describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a).

The notice requirements were met in this case by a letter sent to the Veteran in May 2010. This correspondence advised the Veteran of the information necessary to substantiate his claims and of his and VA's respective obligations for obtaining specified types of evidence. See Quartuccio v. Principi, 16 Vet. App. 183 (2002); 38 C.F.R. § 3.159(b). It also advised the Veteran of how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The Veteran has not alleged that VA failed to comply with the notice requirements of the VCAA, and he was afforded a meaningful opportunity to participate effectively in the processing of his claim, and has in fact provided additional arguments at every stage. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005).

The notice required by 38 U.S.C.A. § 5103(a) should be provided to a claimant before the initial unfavorable agency of original jurisdiction (AOJ) decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103 (2005). That was done in this case.

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA treatment records are in the file. The VA has also obtained private treatment records and associated them with the claims file. As such, the Board finds the duty to assist with obtaining medical records has been satisfied. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. The case of McLendon v. Nicholson, 20 Vet. App. 79 (2006), held that an examination is required when (1) there is evidence of a current disability, (2) evidence establishing an "in-service event, injury or disease," or a disease manifested in accordance with presumptive service connection regulations occurred which would support incurrence or aggravation, (3) an indication that the current disability may be related to the in-service event, and (4) insufficient evidence to decide the case.

The Board notes that the Veteran has not been afforded a VA examination in regard to his claim for service connection for hypertension. After carefully reviewing the record, the Board has determined that such an examination is not necessary in this particular case since it is not needed to decide the claim. See 38 C.F.R. § 3.159(c)(4). While there is evidence that the Veteran currently suffers from hypertension, there is no indication of any evidence establishing an "in-service event, injury or disease," or a disease manifested in accordance with presumptive service connection regulations which would support incurrence or aggravation, see McLendon, supra., nor is there any evidence suggesting that the currently diagnosed hypertension is related to service. Thus, there is no need to conduct a VA examination.

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the appellant in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103 and 5103A; 38 C.F.R. § 3.159.


APPLICABLE LAWS AND REGULATIONS

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1) (2013).

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2) (2013).

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C.A. § 1110. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection for the claimed disorder on a direct basis, generally there must be probative evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

For certain chronic disorders, including arthritis, hypertension, and cardiovascular disease, service connection may be granted if the disease becomes manifest to a compensable degree within one year following separation from service. See 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309, 3.384 (2013).

A Veteran seeking ultimate service connection under 38 C.F.R. § 3.303(b) on account of presumptive service connection can only do so for the chronic diseases that are named in 38 C.F.R. § 3.309(a) because § 3.307(a) states "[n]o condition other than one listed in § 3.309(a) will be considered chronic." In Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), it was found that the same link between §§ 3.307(a) and 3.309(a) exists in those instances when it cannot be established that chronic disease has been "shown" to exist during a presumptive period, but can show that a chronic condition was noted in the presumptive period but sufficiently to establish a diagnosis beyond question. In these cases, a Veteran can only benefit from continuity of symptomatology to support entitlement to service connection if the chronic disease claimed is one listed at § 3.309(a). Hypertension is a disease listed at § 3.309(a).


FACTUAL BACKGROUND AND ANALYSIS

The Veteran's service treatment records are completely silent as to any complaints of, treatment for, or diagnosis of hypertension. Blood pressure readings taken at the time of his preinduction examination conducted in September 1965, an examination performed in June 1966, and at the January 1968 separation examination were all within normal limits.

There are voluminous post-service treatment records in the Veteran's claims folder. The report of a VA examination conducted in December 1969 does not contain any blood pressure readings. The first notation of this disorder is not noted until 1987, in VA outpatient treatment records, at which time he was noted to have hypertension. A diagnosis of essential hypertension was noted in September 1988. A March 1996 VA treatment note indicates that this condition was first noted 8 years before (approximately 1988). A January 2004 Social Security Administration determination noted that the Veteran had had hypertension since 1983.

According to 38 C.F.R. § 4.104, Diagnostic Code (DC) 7010, Note (1) (2013), hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on least three different days. For the purposes of this section, the term hypertension means that the diastolic blood pressure reading is predominantly 90mm. or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160mm. or greater with a diastolic blood pressure of less than 90mm.

After a careful review of the evidence of record, it is found that entitlement to service connection for hypertension is not warranted. There is no indication that this disorder was present in service, nor is there any evidence that it manifested to a degree of 10 percent or more within one year of the Veteran's discharge from service, that is, by January 1969. There is also no evidence to suggest any continuity of symptomatology related to hypertension at any time prior to the diagnosis noted in 1987. To the contrary, this condition was not found until, at the earliest, 1983, some 15 years after his separation. This long gap between separation and the first findings of hypertension in the 1980's also militates against the claim. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir 2000) (holding that a lengthy period of absence of complaints of a condition can be considered as a factor in resolving a claim). There is no evidence of record which suggests an etiological link between his service and the subsequent development of hypertension several years following his discharge.

In fact, the only evidence suggesting a relationship between his service and his currently diagnosed hypertension are the Veteran's statements. There is no competent opinion of record that provides for such a relationship. The Board points out that, although a lay person is competent to testify only as to observable symptoms, see Falzone v. Brown, 8 Vet. App. 398, 403 (1995), a layperson is not, however, competent to provide evidence that the observable symptoms are manifestations of chronic pathology or a diagnosed disability, unless such a relationship is one to which a lay person's observation is competent. See Savage v. Gober, 10 Vet. App. 488, 495-97 (1997). There is no indication in the record that the Veteran is competent to render an opinion as to the etiology of his diagnosed hypertension. Such an opinion requires professional expertise, which the Veteran is not shown to possess and given the lack of medical evidence to suggest the existence of hypertension for 15 years after service such an opinion would not be necessary. In this case, the Board has determined that the medical evidence is more probative of the issue, and that it outweighs the lay statements. Accordingly, the Veteran's claim must be denied. 

In reaching this decision, the Board has considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the appellant's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 



ORDER

Entitlement to service connection for hypertension is denied.


REMAND

The Veteran has alleged that he has bilateral lower extremity neuropathy that he attributes to his service-connected lumbar paravertebral myositis. This claim has been remanded for opinions, which were provided in August 2010 and February 2012. The 2010 opinion stated that 

Above mentioned condition [the service-connected condition] is not etiologically related to any bilateral neuropathies or radiculopathies since the service connected condition does not cause nerves damage. Service connected condition is related to lumbar muscles, not to peripheral nerves or nerve roots so as to cause any neural manifestations. Patient's neural symptoms most likely has to do with actual degenerative joint disease in the spine (not service related).

The 2012 examiner, after reviewing the file, opined that

Lumbar spondylosis, as well as lumbar discogenic disease are the result of aging and are not etiological or pathophysiologically related to service connected condition of lumbar strain (which affects only the paravertebral muscles and not the intervertebral area or the skeletal portion of the spine).

However, while these opinions appear to rule out a direct causal relationship between the Veteran's service-connected lumbar paravertebral myositis and his neurological complaints in the lower extremities, they do not address the issue of whether the service-connected lumbar paravertebral myositis is aggravating any neurological disorder of both lower extremities. The law clearly states that for any disability which is proximately due to, or results from, another disease or injury for which service-connected has been granted shall be considered a part of the original condition. 38 C.F.R. § 3.310(a) (2013). Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease or injury, will be service-connected. However, VA will not concede that a nonservice-connected disease or injury was aggravated by a service-connected disease or injury unless the baseline level of severity of the nonservice-connected disease or injury is established by medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury. 38 C.F.R. § 3.310(b) (2011); see also Allen v. Brown, 7 Vet. App. 439, 448 (1995). (This standard of assessing aggravation of disability under 38 C.F.R. § 3.310 was established in 2006. See 71 Fed. Reg. 52744-47 (Sept. 7, 2006) (codified at 38 C.F.R. § 3.310). Although VA indicated that the purpose of the regulation was merely to apply the Court's 1995 ruling in Allen, it was made clear in the comments to the regulation that the 2006 changes were intended to place the burden on the claimant to establish a pre-aggravation baseline level of disability for the nonservice-connected disability before an award of service connection based on aggravation may be made. 

The Board therefore determines that another opinion must be obtained concerning whether the Veteran's service-connected lumbar paravertebral myositis aggravates, beyond its natural progression, any neurological disorder of the lower extremities. 

The Veteran has also contended that his service-connected lumbar paravertebral myositis is more severe than the current disability evaluation would suggest. He has stated that he suffers from constant pain and limitations in his ability to function. The last examination of the Veteran's low back was performed in August 2010. Given his current complaints, the age of the examination, as well as the currently unresolved relationship of any neurological impairment to his lumbar paravertebral myositis, the Board finds that another VA examination would be helpful in ascertaining the current degree of severity of his service-connected lumbar paravertebral myositis.

While in remand status, the Veteran must also be asked to provide information as to any treatment, from either VA or from non-VA health care providers, since February 2012 (the date of the last treatment reports of record).

The Veteran has also claimed that he is entitled to an effective date earlier than June 14, 2003 for the award of service connection for a left knee disorder. The Veteran's representative also raised a vague claim that clear and unmistakable error (CUE) was made in an earlier decision that denied service connection for a left knee disorder. The Veteran, in his October 2006 notice of disagreement with the effective date assigned noted that he had first requested service connection when he left service (and which was denied in a June 1969 rating action ) and stated "[m]y S/C benefits for my left knee condition should be retroactive to the date I requested originally." Based on this evidence, the Board is unclear as to which decision the Veteran is alleging contains CUE and what the nature of the error(s) might be. This requires clarification.

In the November 2009 remand, the Board had referred the Veteran's claim for CUE to the RO for initial adjudication. While a CUE claim was addressed in the February 2012 statement of the case (SOC) that addressed the claim for an earlier effective date for the award of service connection for the left knee disability, the Board finds that this does not constitute an "initial adjudication" of this claim. Such adjudication must be undertaken, particularly in order to protect the Veteran's right to due process and to ensure that he has been afforded all his appellate rights in regard to this claim.

Because the decision on the CUE claim could impact the claim for an earlier effective date for service connection, it is found to be intertwined with the CUE claim (that is, should CUE be found in an earlier decision, the claim for an earlier effective date may become moot). See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (noting that two issues are inextricably intertwined when the adjudication of one issue could have significant impact on the other issue). Therefore, a final decision as to the earlier effective date claim will be deferred pending the outcome of the CUE claim.

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request that he provide the names and addresses of all VA and non-VA health care providers from whom he has sought treatment since February 2012. He must be requested to sign and return all appropriate releases authorizing VA to obtain records from any non-VA health care providers identified. All efforts to obtain any identified records must be fully documented for inclusion in the claims folder. For any VA records, all attempts to obtain the records must be continued until it is determined that the records are not available or that further attempts to locate them would be futile. If VA records identified cannot be located, a formal Memorandum of Unavailability must be prepared for inclusion in the claims folder.

2. Once the above-requested development has been completed to the extent possible, schedule VA orthopedic and neurological examinations of the Veteran in order to ascertain the current nature and degree of severity of the service-connected lumbar paravertebral myositis. The claims folder, to include any pertinent records contained in the Veteran's Virtual VA eFolder, must be made available to the examiners to review in conjunction with the examinations. Any special studies deemed necessary must be conducted. 

Range of motion studies must be conducted using a goniometer. The examiner must comment on whether there is functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. See 38 C.F.R. § 4.40; DeLuca v. Brown, 8 Vet. App. 202 (1995). The examiner must also indicate whether the service-connected lumbar paravertebral myositis results in decreased movement, weakened movement, excess fatigability, incoordination, and pain on movement, swelling, and deformity or atrophy of disuse. Painful motion is considered limited motion at the point that the pain actually sets in. See VAOPGCPREC 9-98.

After a complete review of the record, an opinion must also be provided as to whether it is at least as likely as not (at least a 50-50 degree of probability) that the Veteran's service-connected lumbar paravertebral myositis aggravates, beyond its natural progression, any diagnosed neurological disability of both lower extremities. 

3. The Veteran must be advised of the importance of reporting to the scheduled VA examinations and of the possible adverse consequences of failing, without good cause, to so report. See 38 C.F.R. § 3.655 (2013). A copy of the notification letter sent to the Veteran must be included in the claims folder and must reflect that it was sent to his last known address of record. If he fails to report, the claims folder must indicate whether the notification letter was returned as undeliverable.

4. Contact the Veteran and his representative and request that he/they identify which prior denial of service connection for a left knee disability (June 1969, October 1970, August 1984, January 1988, January 1991 or November 1998) allegedly contains clear and unmistakable error. It must also be indicated, with specificity, what clear and unmistakable error was allegedly committed in the rating action being challenged. See Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (quoting Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc), which noted a three-pronged test to determine the presence of CUE: (1) either the correct facts, as they were known at the time, were not before the adjudicator (not merely disagreement with how the facts were weighed) or the statutory or regulatory provisions extant at the time were incorrectly applied: (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made;" and (3) a determination that there was CUE must be based on the record and the law that existed at the time of the prior adjudication in question.

5. Once the above information in paragraph 3 has been provided, adjudicate the Veteran's claim for CUE. If the claim is denied, he must be provided full notice of his appellate rights.

6. Readjudicate the Veteran's claims for entitlement to an increased staged evaluation for the service-connected lumbar paravertebral myositis and entitlement to service connection for bilateral lower extremity neuropathy. If any part of the determination remains adverse to the Veteran, provide him and his representative with a SSOC and an opportunity to respond. The case should then be returned to the Board for further appellate consideration, if otherwise in order. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).




______________________________________________
JOAQUIN AGUAYO-PERELES
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs