http://www.va.gov/vetapp16/Files3/1621763.txt

Citation Nr: 1621763 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 12-12 441 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut

THE ISSUE

Entitlement to service connection for right shoulder disability.

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Veteran

ATTORNEY FOR THE BOARD

Jennifer R. White, Counsel

INTRODUCTION

The Veteran had active service from August 1956 to August 1958.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut.

The Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge (VLJ) in April 2014. A copy of the hearing transcript is of record.

In the May 2014 Board decision, the Veteran's claim for reopening the claim for entitlement to right shoulder disability was granted. The Board remanded the claim, on the merits, for further development in May 2014, August 2015 and December 2015. The required development has been completed and the case has been returned to the Board for further appellate adjudication. See, e.g., Stegall v. West, 11 Vet. App. 268 (1998) (the U.S. Court of Appeals for Veterans Claims vacated and remanded a Board's decision because it failed to ensure that the RO achieved full compliance with specific instructions in a Board remand).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.

FINDING OF FACT

3. A chronic right shoulder disability did not have its clinical onset in service and is not otherwise related to active duty; right shoulder arthritis was not exhibited within the first post service year. 

CONCLUSION OF LAW

Chronic right shoulder disability was not incurred in or aggravated by active service, and right shoulder arthritis may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

Here, the Veteran was sent a letter in December 2010 that addressed all notice elements concerning the claimed shoulder disability. Accordingly, no further development is required with respect to the duty to notify.

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Veteran was provided a VA examinations in connection with his claim of service connection for a right shoulder disability. These examinations are sufficient to adjudicate the claim for service connection. The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records, as well as post-service reports of VA and private treatment and examination. Moreover, the Veteran's statements in support of the claim are of record, including testimony provided at his April 2014 hearing. The Board has reviewed such statements and concludes that no available outstanding evidence has been identified. The Board has also perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim. 

In Bryant v. Shinseki, 23 Vet App 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. 3.103 requires that the Veterans Law Judge who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the hearing, the Veterans Law Judge outlined the issues on appeal and suggested that any evidence tending to show that current right shoulder disability was related to service would be helpful in establishing the claim. Moreover, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. 3.103; they have not identified any prejudice in the conduct of the Board hearing. 

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Regulations and Analysis

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection also may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In general, direct service connection may not be granted without medical evidence of a current disability; medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996). Furthermore, arthritis, if manifest to a degree of 10 percent within one year after separation from active duty, may be presumed to have been incurred in service. See 38 C.F.R. §§ 3.307, 3.309 (2015).

Moreover, where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and arthritis becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). 

In evaluating the claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a 3-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303 at 308 (2007) (Observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence in light of the entirety of the record. 

Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159. Lay evidence may be competent and sufficient to establish a diagnosis of a condition when

(1) a layperson is competent to identify the medical condition (i.e., when the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer);

(2) the layperson is reporting a contemporaneous medical diagnosis, or;

(3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. 

Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009) (where widow seeking service connection for cause of death of her husband, the Veteran, the Court holding that medical opinion not required to prove nexus between service connected mental disorder and drowning which caused Veteran's death). 

In ascertaining the competency of lay evidence, the Courts historically had held that a layperson is not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183 (1997). In certain instances, however, lay evidence has been found to be competent with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See, e.g., Barr v. Nicholson, 21 Vet. App. 303 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398 (1995) (flatfeet). Laypersons have generally been found to not be competent to provide evidence in more complex medical situations. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (concerning rheumatic fever). 

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises. It also includes statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1).

After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this function, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-512 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2014); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The Veteran testified in April 2014 that he injured his shoulder in-service, that he got treatment after service and has continued treatment since that time.

Turning to the evidence of record, service treatment records reveal that the Veteran fell in the snow on February 1, 1957 and injured a shoulder. The Veteran was treated with liniment and a hot pack. There was no follow-up treatment indicated. The Veteran's separation physical examination revealed normal upper extremities and a Report of Medical History indicated that the Veteran did not have and had not had painful or "trick" shoulder or any other arthritis or joint deformity.

The Veteran filed a claim for compensation in February 1972, listing psychiatric disability and leg disability; there was no mention of right shoulder disability. The Veteran first claimed entitlement to service connection for a right shoulder disability in December 1982. 

The Veteran was afforded a VA examination in May 2011. The Veteran reported his in-service shoulder injury; further indicating that he was a welder post-service and also worked as a service agent at a car rental agency. The Veteran provided the examiner with a December 2010 MRI of the right shoulder indicating an old healed angulated humeral neck fracture, narrowing of the acromiohumeral space, supraspinatus tendinosis without evidence of a rotator cuff tear. The examiner's diagnosis was degenerative joint disease of the right shoulder with tendonitis which was more likely related to the Veteran's work history and aging.

The Veteran submitted a May 29, 2012 opinion from a private physician. The physician indicated that the Veteran had an injury in which he dislocated his right shoulder in a fall. The Veteran had reported to the physician that the relevant records were "lost." The provider indicated that the Veteran has post-traumatic osteoarthritis, right shoulder which appeared to be due to his previous injury.

In January 2014, the Veteran was afforded an additional VA examination. The examiner indicated that the Veteran's current right shoulder degenerative joint disease with evidence of impingement and tendonitis is less likely as not related to the singular event in service in 1957. The provider observed that there was an unremarkable physical exam in 1958 and no evidence of chronicity or a disability related to the 1957 injury.

The RO requested an additional VA medical opinion in July 2014. The examiner indicated that it is less likely than not that the Veteran's right shoulder degenerative joint disease with evidence of impingement and tendonitis is related to the singular event in service in 1957, noting a normal physical examination in 1958 with current severe bilateral degenerative joint disease. The examiner indicated that she found no evidence of a chronic disability related to the 1957 injury. The examiner also indicated that the Veteran was gainfully employed as a welder after service and retired from the Tampa airport at the age of 62. The examiner also noted that the private physician's opinion linking the right shoulder condition to a prior traumatic event indicated no evidence to support this opinion.

In June 2015, the Veteran was afforded an additional in-person examination. The examiner indicated that the Veteran's right shoulder disability is less likely than not related to active service as there was no indication in-service that the Veteran's laterality of the shoulder was injury. The examiner indicates thirteen in-service treatment records (post-shoulder injury) which do not indicate a shoulder injury or ailment. The examiner additionally reiterated that the Veteran's separation Medical Examination and Report of Medical History do not report any right shoulder injury or residuals. The examiner summarized by stating that there was no chronicity of a right shoulder injury during his miliary service or within a year of military service.

In conclusion, the Board finds that service connection for the Veteran's right shoulder disorder must be denied as the preponderance of the evidence is against a finding that the disability is related to active service, any incident of active service or is secondary to any service-connected disability. 

Indeed, there is no competent evidence linking the Veteran's right shoulder disorder to any incident of active service. Rather, he expressly denied problems at his separation examination, and the clinical record reveals no treatment or diagnosis for such problems for many years after discharge. Additionally, there is no indication in the record that osteoarthritis manifested within one year of active service. 

The Veteran indicated during hearing testimony that his right shoulder had hurt him on and off since service. The claim of continuity is not convincing in this case. The Veteran filed a claim for compensation in 1972 and made no mention of a shoulder disability. It seems likely that if he had a shoulder disability that he felt was related to service, he would have mentioned this at the time. A VA examination in 1972 noted some right knee complaints and findings, but nothing related to the shoulder. To the extent the Veteran is claiming that shoulder problems have persisted since service, his statements are not consistent with the record and are not convincing. Further, evidence of a prolonged period without medical complaint, and the amount of time that elapsed since military service, can be considered as evidence against the claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). 

Lay evidence may be competent on a variety of matters concerning the nature and cause of disability. Jandreau v. Shinseki, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). The general principle that trauma may lead to chronic shoulder disability is commonly known and, therefore, the Veteran's testimony that current shoulder disability is related to his in-service right shoulder injury has some tendency to make a nexus more likely than it would be without such an assertion. However, once the threshold of competency is met, the Board must consider how much of a tendency a piece of evidence has to support a finding of the fact in contention. Not all competent evidence is of equal value. The Board finds the multiple VA examination reports more probative than the Veteran's statements. The examiners are medical professionals and are able to review the overall record, including the Veteran's history and opinions, and to consider the Veteran's post-service work history in determining that the Veteran's current right shoulder disabilities are not related to service. Regarding the private medical opinion, this opinion was based on the Veteran's statements of the severity of the in-service injury, specifically noting dislocation which is not indicated by the treatment records created by medical professionals at the time of the injury; thus, the opinion has little probative value. See Owens v. Brown, 7 Vet. App. 429, 433 (1995) (an opinion that is based on review of the medical evidence is more probative than an opinion that is based on the veteran's reported history).

In sum, taking into account all of the evidence of record, the Board finds that the preponderance of the evidence is against a finding that the Veteran's right shoulder disability is related to active service, to any incident of active service, or is secondary to any service-connected disability. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).

 
ORDER

Entitlement to service connection for right shoulder disability is denied.

____________________________________________
THOMAS J. DANNAHER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs