Citation Nr: 1806322 
Decision Date: 01/31/18 Archive Date: 02/07/18

DOCKET NO. 14-20 761 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to service connection for ischemic heart disease, to include as due to herbicide agent exposure.

2. Entitlement to service connection for diabetes mellitus, to include as due to herbicide agent exposure.

3. Entitlement to a rating in excess of 10 percent for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Mississippi State Veterans Affairs Board


WITNESSES AT HEARING ON APPEAL

Appellant and Spouse


ATTORNEY FOR THE BOARD

K. D. Cross, Associate Counsel


INTRODUCTION

The Veteran had active service from February 1958 to April 1977, and from April 1980 to April 1986.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a April 2011 and October 2014 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi.

In March 2017, the Veteran participated in a videoconference hearing before the undersigned Veterans Law Judge. A hearing transcript is of record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).

The claims for service connection for ischemic heart disease and diabetes mellitus are remanded to the Agency of Original Jurisdiction.


FINDING OF FACT

As of April 2017 the Veteran's service connected bilateral hearing loss was manifested by no worse than Level II loss for the right ear, and no worse than Level VI loss for the left ear on Table VII.




CONCLUSION OF LAW

The criteria for entitlement to a rating in excess of 10 percent for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.383, 3.385, 4.85, 4.86 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA has duties to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 (2017). Neither the Veteran nor representative has raised any issues with the duty to notify or duty to assist. The Board's obligation to read filings in a liberal manner does not require the Board to search the record and address procedural arguments when the Veteran does not raise them before the Board. Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015); Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

Disability ratings are determined by application of the criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C. § 1155 (2012); 38 C.F.R. Part 4 (2017). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating applies. 38 C.F.R. § 4.7 (2017). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2017). 

The Veteran's entire history is to be considered when making disability evaluations. 38 C.F.R. § 4.1 (2017); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where, as here, the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of the assignment of different ratings for distinct periods of time, based on the facts found is required. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Whether lay evidence is competent and sufficient in a particular case is an issue of fact and that lay evidence can be competent and sufficient to establish a diagnosis when (1) a layperson is competent to identify the medical condition (noting that sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

The Board has authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence. Madden v. Gober, 125 F.3d 1477 (Fed. Cir. 1997). VA may favor one medical opinion over another provided that VA offers an adequate basis for doing so. Owens v. Brown, 7 Vet. App. 429 (1995). 

The Veteran contends that his hearing loss is of such severity to warrant a rating in excess of 10 percent. More specifically, he asserts that his hearing loss has gotten worse because he now requires the assistance of two hearing aids, whereas before he only needed one. Furthermore, in January 2017 the Veteran testified that when noises, such as a fan, are in the background it is difficult for him to hold a conversation with other people due to the noise. The Veteran also asserted that he is now unable to play his guitar in tune as he previously did when his hearing was better. The spouse testified that about five years ago, she noticed the Veteran started reading lips to better understand people.

Under the applicable criteria, ratings for hearing loss are determined in accordance with the findings obtained on audiometric evaluations. Ratings for hearing impairment range from 0 percent to 100 percent based on organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests, together with the average hearing threshold level as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 Hertz. To evaluate the degree of disability from hearing impairment, the rating schedule establishes eleven auditory acuity levels designated from Level I for essentially normal acuity through Level XI for profound deafness. 38 C.F.R. § 4.85, Diagnostic Code 6100 (2017).

Hearing tests will be conducted without hearing aids, and the results of above-described testing are charted on Table VI and Table VII. 38 C.F.R. § 4.85 (2017).

An adequate evaluation of impairment of hearing acuity rests upon the results of controlled speech discrimination tests, together with tests of the average hearing threshold levels at certain specified frequencies. 38 C.F.R. § 4.85, Diagnostic Code 6100 (2017).

The assignment of disability ratings for hearing impairment are to be derived by the mechanical application of the Ratings Schedule to the numeric designations assigned after audiometry evaluations are conducted. Lendenmann v. Principi, 3 Vet. App. 345 (1992).

Audiometric evaluations are conducted using the controlled speech discrimination tests together with the results of the pure tone audiometry test. 38 C.F.R. § 4.85(a) (2017). Numeric designations of Levels I through XI are assigned by application of Table VI, in which the percentage of discrimination is intersected with the pure tone decibel loss. 38 C.F.R. § 4.85, Table VI (2017). The results are then applied to Table VII, for a percentage rating. Pure tone threshold average, as used in Tables VI and VIA, is the sum of the pure tone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four. This average is used in all cases, including those in 38 C.F.R. § 4.86, to determine the Roman numeral designation for hearing impairment from Table VI or Table VIA. 38 C.F.R. § 4.85(d) (2017). 

Where pure tone thresholds are 55 decibels or more at each of the four specified frequencies of 1000, 2000, 3000, and 4000 Hertz, either Table VI or Table VIA is applied, and whichever results in the higher numeral shall be applied. 38 C.F.R. § 4.86 (a) (2017). When the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz, the higher numeral of Table VI or Table VIA is also applied. 38 C.F.R. § 4.86 (b) (2017).

At an September 2014 VA audiology examination, the Veteran exhibited audiometric findings of:




HERTZ



AVG
1000
2000
3000
4000
RIGHT
50
40
50
45
60
LEFT
53
40
50
55
65

Speech audiometry testing using a Maryland CNC word list found speech recognition ability of 88 percent in the right ear, and 72 percent in the left ear. The examiner opined that the Veteran had severe sensorineural hearing loss in the right and left ear. 

Applying the method for evaluating hearing loss to the results of the Veteran's audiology evaluation, the September 2014 audiometric evaluation found Level II hearing acuity in the right ear and Level V in the left ear using Table VI. Application of those findings to Table VII corresponds to a 10 percent rating under Diagnostic Code 6100. 38 C.F.R. § 4.85 (2016).

At an April 2017 VA audiology examination, the Veteran exhibited audiometric findings of:




HERTZ



AVG
1000
2000
3000
4000
RIGHT
51
50
40
45
70
LEFT
60
45
55
65
75

Speech audiometry testing using a Maryland CNC word list found speech recognition ability of 88 percent in the right ear, and 60 percent in the left ear. The examiner opined that the Veteran had severe sensorineural hearing loss in the right and left ear. 

Applying the method for evaluating hearing loss to the results of the Veteran's audiology evaluation, the April 2017 audiometric evaluation found Level II hearing acuity in the right ear and Level VI in the left ear using Table VI. Application of those findings to Table VII corresponds to a 10 percent rating under Diagnostic Code 6100. 38 C.F.R. § 4.85 (2016).

In addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in the final report because of the potential application of 38 C.F.R. § 3.321(b) in considering whether referral for an extra-schedular rating is warranted. Unlike the rating schedule for hearing loss, 38 C.F.R. § 3.321(b) does not rely exclusively on objective test results to determine whether a referral for an extra-schedular rating is warranted. Martinak v. Nicholson, 21 Vet. App. 447 (2007).

The April 2017 VA examiner specifically set forth the functional effects of the Veteran's hearing disability, including a finding that the Veteran's bilateral hearing loss impacted ordinary conditions of daily living. Specifically, the Veteran has difficulty hearing his family and relies on lip reading. Furthermore, the Veteran has to increase the volume on the television to a level that is too loud for others.

The Board has considered the Veteran's statements in his January 2017 hearing regarding his difficulty with hearing. A Veteran is competent to describe symptoms of which he has first-hand knowledge. Charles v. Principi, 16 Vet. App. 370 (2002); Washington v. Nicholson, 19 Vet. App. 362 (2005). As the Board finds that hearing loss and its symptomatology are something that the Veteran, as a layperson, is competent to describe, his statements regarding the effects he has experienced due to hearing loss carry probative weight. Barr v. Nicholson, 21 Vet. App. 303 (2007); Falzone v. Brown, 8 Vet. App. 398 (1995).

However, the Board is bound in its decisions by the VA regulations for the rating of hearing loss. 38 U.S.C. § 7104(c) (2012). Rating hearing loss requires the use of the Maryland CNC speech discrimination test and the pure tone threshold average determined by an audiometry test. The Board does not discount the difficulties that the Veteran experiences as a result of service-connected bilateral ear hearing loss. However, disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designations assigned based on audiometric evaluations. The Board has no discretion in the matter and is bound by law to apply VA's rating schedule based on the Veteran's audiometry results. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017); Lendenmann v. Principi, 3 Vet. App. 345 (1992)

The Veteran's hearing loss symptoms and manifestations are fully contemplated by the rating criteria of Diagnostic Code 6100. In this case, the Veteran's hearing loss symptoms and manifestations of difficulty having conversations and having to wear hearing aids are neither unusual nor exceptional. The schedular rating criteria specifically provide for ratings based on all levels of hearing loss, including exceptional hearing patterns which were demonstrated in this case, and as measured by both audiometric testing and speech recognition testing. The rating criteria for hearing loss contemplate the functional effects of difficulty hearing and understanding speech. Doucette v. Shulkin, 28 Vet. App. 366 (2017).

Accordingly, based on the Veteran's audiological examinations, the Board concludes that the preponderance of the evidence is against entitlement to an initial rating for bilateral hearing loss in excess of 10 percent. Therefore, the claim for increase is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2017).


ORDER

Entitlement to a rating in excess of 10 percent for bilateral hearing loss is denied.


REMAND

Although further delay is regrettable, the Board finds that additional development is necessary prior to appellate review. A remand by the Board confers on the Veteran the right to compliance with the remand. Stegall v. West, 11 Vet. App. 2689 (1998).

The Veteran asserts that although he was not stationed in Vietnam, he visited there in 1964, while serving on the USS Kitty Hawk in the South China Sea. The Veteran has stated that as an Aviation Machinist Mate, Second Class, assigned as Captain of an A-3 Sky Warrior, he flew the fourth seat on certain flights, which involved thrice visiting Saigon and once visiting DaNang. He stated that his duties in Vietnam included pre- and post-flight checks and packing the drag chute, tasks that took between two and three hours. The Veteran stated that captain always remained with the aircraft.

The Board notes that the RO previously requested military personnel records and other documents to corroborated the Veteran's statements. Most of these records were unobtainable, and the ones which were obtained were mostly illegible.

The service personnel records confirm service on the USS Kitty Hawk and establish that, in January 1964 and December 1964, the Veteran underwent operational flight training and was designated as an A-3B Plane Captain. He submitted written statements from fellow servicemen, one of which indicates that, as a plane captain of the Heavy Attack Squadron Thirteen, during its 1963 to 1964 Western Pacific Cruise, the Veteran occasionally flew with his crew to air bases in Vietnam, including Saigon and DaNang. The other is from a retired Naval Reserve Captain who served in the Veteran's squadron and indicates a belief that the Veteran spent time on the ground in Vietnam. That person explained that, during the time period in question, a number of plane captains and flight crews flew and landed in Vietnam.

In March 2017 the Board Remanded the Veteran's claims for service connection for IHD and diabetes mellitus to determine whether it is at least as likely as not (50 percent or greater probability) that at any point in 1964, the Veteran, as an A3-B Plane Captain, flew to an airbase in Vietnam, including Saigon or DaNang.

In a September 2017, the Joint Service Records Research Center (JSRRC) concluded that no evidence was found to confirm the Veteran's claim that he visited Vietnam and therefore they could not concede herbicide agent exposure. The response indicated that the USS Kitty Hawk engaged in special operations in the South China Sea off the coast of Vietnam from May 1964 to June 1964. The time frames searched by the JSRRC to determine if the Veteran flew to an airbase in Vietnam was January 1964 to March 1964 and September 1964 to October 1964. The reason provided for only looking in the indicated time frames was because the JSRRC "will only [do] 60 day request at one time." As a result, there is no indication that the file was reviewed between April 1964 through August 1964, and November 1964 through December 1964. Furthermore, the JSRRC indicated activity off the Coast between May 1964 and June 1964, but did not review that timeframe to determine if any A3-B aircraft based on the USS Kitty Hawk flew to airbases in Vietnam. As a result, the Board must remand to request review of the records for this timeframe.

Accordingly, the case is REMANDED for the following action:

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.

1. Contact the appropriate records custodian, to include the Joint Services Records Research Center or any other appropriate agency and exhaust all avenues of development, including by obtaining copies of all relevant TDY orders, disembarkation forms, sea and air travel embarkation slips, and flight logbooks, in an effort to determine whether it is at least as likely as not (50 percent or greater probability) that at any point between May 1964 and June 1964, the Veteran, as an A3-B Plane Captain, flew to an airbase in Vietnam, including Saigon or DaNang. More specifically, indicate what special operations took place between May 1964 and June 1964. Associate with the record all information obtained. A specific statement should be provided as to whether any A3-B aircraft stationed aboard the USS Kitty Hawk landed in Vietnam during the deployment to the South China Sea in 1964. If multiple requests are required to satisfy this inquiry, multiple requests must be made.

2. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs