**Larry A. TOWNSEND, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–456.**

United States Court of Veterans Appeals.

Argued June 10, 1991.

Decided July 25, 1991.

Ronald L. Smith, Washington, D.C., for appellant.

Deborah Singleton, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before KRAMER, IVERS and STEINBERG, Associate Judges.

KRAMER, Associate Judge:

In its decision of February 13, 1990, the Board of Veterans' Appeals (BVA) denied appellant's reopened claim for service connection for pes planus (flat feet). Because the BVA, when reviewing the Veterans' Administration (now the Department of Veterans Affairs) (VA) rating decision, failed to adequately consider the relevant statutory and regulatory provisions as they relate to material evidence in the record, we reverse and remand the case to the BVA for proceedings consistent with this opinion.

## I.

### Factual Background

Appellant served with the United States Army on active duty from June 1967 to April 1970. R. at 1–3. His induction examination, performed June 21, 1967, revealed no physical abnormalities with his feet. R. at 4–7. However, on July 18, 1967, during basic training, appellant complained of pain in his right foot and was treated by an army physician who noted that appellant had "flat feet", a navicular bar in his right foot, and that appellant reported to him that he had had minimal trouble with his right foot in the past. R. at 8. As a result of this examination, the doctor opined that appellant "was not qualified for induction and ought to be separated from service at the convenience of the government; in the interim, he is to be excused from all military training." R. at 9. Nevertheless, the doctor added in a postscript to this notation that "patient now states he would like to stay in the service. We will try to get him through basic [and] then give him a profile. [Recommend] no prolonged marching [and] no prolonged [running]. [Patient is to] return in a week for check[-up]." R. at 9.

Appellant continued to have discomfort and on August 3, 1967, another army doctor examined appellant, noted that appellant's chief complaint was "general pain in right foot", and recommended that he be limited to light duty with no running, jumping, or prolonged marching. R. at 10–12, 14. At the conclusion of his basic training on August 24, 1967, appellant was found to be qualified for duty with permanent limitations consisting of no crawling, stepping, running, jumping, prolonged standing, or marching. R. at 59–60. On November 6, 1967, he was diagnosed by an army physician as having "severe pes planus valgus." R. at 12.

Despite this diagnosis and appellant's limited duty profile, he was assigned to active combat duty in the Republic of Vietnam where he was required to stand for long periods of time and perform lifting, both of which activities, appeared to irritate his foot condition. R. at 21, 73–74. Throughout this period, appellant continued to be treated for foot pain. R. at 67, 68, 70, 71, 73, 77–80.

Following his duty in Vietnam and prior to his discharge, appellant was given a separation examination on February 12, 1970, on the report of which it was noted that appellant had "pes planus severe—see health record." Supp.R. at 1.

On February 24, 1983, appellant filed a claim for service-connected disability compensation for, *inter alia,* pes planus. R. at 29. The VA Regional Office (RO), while acknowledging that appellant's induction examination did not document his foot condition and that severe pes planus was evident at the time of his discharge, denied his claim for service-connected pes planus concluding:

> By generally accepted medical principles, pes planus ... [is] held to have preexisted service and [was] not aggravated thereby.

R. at 33, 46.

Apparently, sometime in 1989, he reopened his claim and, in due course, appealed to the BVA which denied it on February 13, 1990, stating:

> A review of the evidence of record reveals that, there having been no timely appeal, the originating agency's determination of March 1983 became final and, **in the absence of error,** that determination is not subject to revision on the same factual basis.

and concluding:

> 1. A bilateral foot disorder was not incurred in or aggravated by service.
>
> 2. The originating agency's determination of March 1983 was final; the additional evidence received subsequent to that determination does not present a new factual basis so as to warrant the grant of service connection for a bilateral foot disorder.

*Larry A. Townsend,* BVA 91–36773, at 4 (Feb. 13, 1990) (emphasis added). Appellant subsequently perfected an appeal to this Court.

## II.

### Analysis

■ 38 U.S.C. § 353 (1988), provides:

A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in dis-

ability is due to the natural progress of the disease.

This statutory provision is interpreted by 38 C.F.R. § 3.306(b) (1990), which provides on behalf of certain veterans, like appellant, who have had qualifying war service, that:

> (b) *War service.* **Clear and unmistakable evidence (obvious or manifest)** is required to rebut the **presumption of aggravation** where the preservice disability **underwent an increase in severity during service.** Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service.

(Emphasis added.) When read together, these provisions state that once a claimant's disability increases in severity during service there is a presumption of aggravation (i.e. service connection), unless it can be established by clear and unmistakable evidence that the increase was due to the natural progress of the disease.

■ Here, the record shows that appellant's foot disorder increased in severity during service inclusive of the time of discharge. R. at 21, 67, 68, 70, 71, 73, 74, 77–80, Supp.R. at 1. Nevertheless, in its decision, the BVA, without a discussion of the presumption or the way it is rebutted, found that there was no error in the RO rating decision which had also ignored the presumption and its rebuttal. Thus, the BVA, having in essence confirmed the RO decision, also incorporated its imperfections. As this Court has consistently ruled, the BVA must apply relevant law (even though 38 C.F.R. § 3.306(b) was not raised by appellant). *See e.g. Akles v. Derwinski,* 1 Vet.App. 118, 120–21 (1991). The BVA apparently relied solely on the "generally acceptable medical principles" rationale given by the RO when it denied appellant's claim. The failure of the BVA to cite medical authority or medical evidence in the record to support this conclusionary statement is not in accordance with law. *See Murphy v. Derwinski,* 1 Vet.App. 78, 81–

82 (1990); *Colvin v. Derwinski*, 1 Vet.App. 171, 174–75 (1991). Nor did the BVA decision provide the necessary reasons or bases to explain its action. *See Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991). Finally, the BVA failed to consider the benefit-of-the-doubt doctrine in resolving appellant's claim. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57–59 (1990).

### III.

For the reasons stated above, the decision of the BVA is reversed and remanded for proceedings consistent with this opinion.

*It is so Ordered.*