Joseph M. FALZONE, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–942.

United States Court of Veterans Appeals.

Nov. 14, 1995.

Michael P. Horan and Linda E. Blauhut, Washington, DC, were on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Susan A. Wuchinich, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Judges.

IVERS, Judge:

Joseph M. Falzone appeals a September 23, 1993, decision of the Board of Veterans' Appeals (BVA or Board) not to reopen a claim for service connection for pes planus. *Joseph M. Falzone*, BVA 93–____ (Sept. 23, 1993); Record (R.) at 3–8. The Court notes that the archive/citation number provided by the Secretary in the Record on Appeal refers to a BVA decision dated September 23, 1992, instead of 1993. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court vacates the September 1993 decision of the BVA and remands the case for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Army from November 9, 1942, to October 28, 1945. R. at 13; Supplemental (Suppl.) R. at 1. The appellant's entrance

physical examination report referred to a preexisting condition of bilateral pes planus, second degree, asymptomatic. R. at 17. The appellant complained of pain in his feet on numerous occasions during service. R. at 21–24, 26–27, 30, 35–37. An October 1943 entry in the appellant's service medical records rated the appellant's pes planus as third degree. R. at 24. The appellant's feet were described as normal on his separation physical examination report. R. at 39.

On March 12, 1951, the appellant filed an application with a VA regional office (RO) seeking service connection for painful flat feet. R. at 42. On June 25, 1951, the RO noted that the appellant had "received treatment in service for claimed disabilities but physical examination at discharge shows no residuals." R. at 48. The RO consequently denied service connection, stating in a rating sheet that "[i]n the absence of evidence of continuity of claimed disabilities and of medical evidence of the veteran's present condition, reasonable probability of a valid claim is not shown." *Ibid.* A June 1951 notification letter from the RO to the appellant included boilerplate language indicating that "[b]efore compensation payments can be authorized, it is necessary that the evidence in file show a disease or injury incurred in or aggravated by service in line of duty and disabling to a degree of 10% or more." R. at 49. Despite the boilerplate language, however, in the same notification letter to the appellant, the RO indicated that "[s]ervice connection has NOT been established for claimed flat feet . . . as [this] condition [was] not shown at time of last examination." *Ibid.* Therefore, based on the reasons given in the rating sheet and in the non-boilerplate portions of the notification letter, the Court concludes that the determinative issue involved in the June 1951 RO's denial was the lack of evidence of continuity of symptomatology and the presence of a disability on the most recent examination, i.e., the appellant's 1945 separation examination.

On May 22, 1991, the appellant filed an application with the RO, seeking service connection for severe flat feet. R. at 52. In a letter to the RO, the appellant wrote that his feet were "ruined" because of his duties involving lifting bombs into the bomb bays of various aircraft. R. at 56. He also wrote that he attributed the necessity for surgery on varicose veins to his foot condition. R. at 57. After having obtained the medical records pertaining to the appellant's varicose vein-related surgery, on July 19, 1991, the RO did not reopen the service connection claim for pes planus. R. at 68. According to an October 29, 1991, Statement of the Case, the reason for the denial was that the appellant had not submitted new and material evidence showing that his pes planus condition, which had existed prior to service, was permanently aggravated during service beyond the normal progression of the condition. R. at 88. Thus, by 1991, the RO's adjudication of the appellant's claim had come to center on the issue of aggravation.

The appellant appeared at a personal hearing before the RO on December 19, 1991. R. at 91–106. At the hearing, the appellant testified that he had never received notice of the RO's June 1951 denial. R. at 92. On January 14, 1992, the hearing officer continued the RO's decision not to reopen the claim. R. at 110. In support of that determination, the hearing officer noted that the appellant's in-service complaints and treatment were "considered the expected exacerbation of his preexisting flat-foot condition." *Ibid.*

On September 23, 1992, the Board remanded for the conduct of an examination by a VA orthopedist. R. at 157. The examiner was directed to opine as to the nature of the appellant's pes planus and the degree of severity. *Ibid.* A December 1992 VA orthopedic examination report diagnosed the appellant with bilateral semirigid pronated/valgus feet, pes planus, left worse than right, and with degenerative arthritis of the feet. R. at 164. On February 19, 1993, the RO continued the denial. R. at 168. On September 23, 1993, the Board did not reopen the appellant's service connection claim for pes planus. *Falzone*, BVA 93–___, at 5; R. at 7.

## II. ANALYSIS

### A. Notice of June 1951 RO Rating Action

■ The appellant's claim for service connection for pes planus was previously denied

by a final RO decision in June 1951. Although the appellant indicated that he did not receive a copy of the rating decision, he has presented no evidence rebutting the presumption that the RO sent a copy of the decision to the last known address of record. *See Mason v. Brown,* 8 Vet.App. 44, 53–55 (1995) (presumption of regularity applies to VA mailing of RO decision in same manner as it applies to BVA mailing of its decision); *Davis v. Brown,* 7 Vet.App. 298, 300 (presumption of regularity that public officers have discharged their official acts in mailing official papers can be overcome only with clear evidence to contrary); *Mindenhall v. Brown,* 7 Vet.App. 271, 274 (1994) (same); *Ashley v. Derwinski,* 2 Vet.App. 307, 308–09 (1992) (same), *reconsidering* 2 Vet.App. 62 (same). Therefore, since the appellant has not rebutted the presumption that notice of the RO rating decision was properly mailed, the June 1951 RO rating decision became final.

### B.   Reopening of Claim

■ Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See Stanton v. Brown,* 5 Vet.App. 563, 566 (1993). On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *See Manio v. Derwinski,* 1 Vet. App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Ibid.* Evidence is "material" where it is relevant to and probative of the issue at hand and where there is a reasonable possibility that, when viewed in the context of all the evidence, both new and old, it would change the outcome. *See Blackburn v. Brown,* 8 Vet.App. 97, 102 (1995); *Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin,* 1 Vet.App. at 174. Second, if the BVA determines that the evidence is "new and material," it must reopen the claim and "evaluate

the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *See Masors,* 2 Vet.App. at 185. The Court reviews the evidence in light of the relevant authorizing statutes and regulations. *See Chavarria v. Brown,* 5 Vet.App. 468, 471 (1993) (Court examined evidence in light of statutes and regulations to determine whether appellant's new evidence was material).

■ A veteran is entitled to service connection for a disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303, 3.304 (1994). Regarding aggravation of a preexisting injury or disease, title 38 of the United States Code provides as follows:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153; *see also* 38 C.F.R. § 3.306(a)–(b) (1994). The presumption of aggravation is applicable only if the preservice disability underwent an increase in severity during service. *Hunt v. Derwinski,* 1 Vet.App. 292, 296 (1991); *see also Browder v. Brown,* 5 Vet.App. 268, 271 (1993) (Board must "explain the criteria it used to determine whether there was an increase in disability of [preexisting condition] during service and how, pursuant to such criteria, it concluded that [there was no in-service worsening]."). "The determination of whether a preexisting disability was aggravated by service is a question of fact." *Doran v. Brown,* 6 Vet.App. 283, 286 (1994). In the context of an original or reopened claim, the Court reviews the Board's determination of aggravation, like other findings of fact, under the "clearly erroneous" standard. *Id.* at 287; *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

### 1. New and Material Evidence

■ The record contains new and material evidence. The appellant has stated in letters to VA and in testimony before an RO hearing officer that he has had painful feet ever since service. The evidence submitted in connection with the RO's June 1951 rating decision consisted of the appellant's service medical records and his application to the RO for service connection for painful flat feet. The paucity of evidence submitted in connection with the 1951 RO adjudication is underscored by the notation on the June 1951 rating sheet that the appellant had not then responded to a request for additional evidence. R. at 48. Since the appellant had not produced any statements regarding his symptoms in connection with the June 1951 RO rating action, his statements submitted in connection with the September 1993 BVA decision were new. Under the facts of this case, the appellant's new statements regarding the continuity of symptomatology (pain) in connection with his feet are competent because they relate to an observable condition. The appellant's pes planus is the type of condition that lends itself to observation by a lay witness. *See also Harvey v. Brown*, 6 Vet.App. 390, 393 (1994) (where veteran's widow was testifying as to observable sequence of events that led to trauma, she was not necessarily opining on matter involving medical causation, and her statements were thus sufficient to render claim well grounded). Furthermore, the appellant's competent statements are material because the determinative issue involved in the June 1951 RO denial of service connection was the question of continuity of symptomatology.

In *Stanton*, 5 Vet.App. at 567, a paramedic's letter describing treatment for periods of extreme back pain with radicular symptoms was held to be material because it related to continuity of symptomatology and thus indirectly to the question of service connection even though it did not directly address whether the condition was incurred in or aggravated during service. In this case, even more than in *Stanton*, the statements regarding continuity of symptomatology provide a direct link between the appellant's active service and the current state of his condition.

Our analysis is consistent with the Court's caselaw regarding the type of evidence required to satisfy the evidentiary prerequisites in the context of the VA adjudication process. In *Moray v. Brown*, 5 Vet.App. 211, 214 (1993), the Court held that a lay assertion of medical causation will not suffice to reopen a claim. However, where the determinative issue is not one of medical causation but of continuity of symptomatology, lay testimony may suffice to reopen a claim. *See* 38 C.F.R. § 3.303(a) (1994) (VA must consider all evidence, including medical and lay evidence); *cf. Godfrey v. Brown*, 7 Vet.App. 398, 406 (1995) (certain medical records, while new, were not material because they were not relevant to and probative of issue of continuity of symptomatology after service); *Cornele v. Brown*, 6 Vet.App. 59, 62 (1993) (physician's report was not material because it did not relate to continuity of symptomatology and thus did not link in-service accident to current cervical spine disability). In this instance, the appellant's statements relate to continuity of symptomatology. When viewed in the context of all the evidence, including, as we will discuss below, the notation in a service medical record indicating a possible worsening in severity during service, the statements are material. Therefore, the appellant's testimony in connection with his resubmitted claim is sufficient to reopen the claim.

In its September 1993 decision, focusing on the evidence generated subsequent to the June 1951 RO rating decision, the Board stated: "The additional evidence shows nothing more than the present degree of disability of his pes planus. It does not provide any indication that his pes planus underwent an increase in severity during his wartime service." *Falzone*, BVA 93–____, at 4; R. at 6. Thus, the Board assumed that the June 1951 RO rating decision had encompassed the issue of aggravation and consequently proceeded to adjudicate the appellant's claim as though the issue were whether the appellant had submitted new and material evidence on the question of in-service aggravation, partic-

ularly of an increase in severity of the preexisting condition.

### 2. De Facto Reopening

■ However, the Board in effect reopened the appellant's claim. Although the language of the Board's decision was couched in terms of a "new and material evidence" analysis,

> when the action of the Board is examined for what it did "in fact," it is clear that the claim was to all intents and purposes reopened and readjudicated. The new evidence was considered in context with all the old evidence and, just as important, the old evidence was reexamined in light of the new evidence.

*Guimond v. Brown,* 6 Vet.App. 69, 72 (1993). Additionally, the Court points not only to the substance of the September 1993 decision, but also to the Board's September 1992 remand for an examination to determine the nature and severity of the pes planus condition. R. at 157. An examination of the appellant would not have been necessary unless his claim was to be adjudicated on the merits. *Cf. Grivois v. Brown,* 6 Vet.App. 136, 140 (1994) (in context of whether claim was well grounded, Court stated that if Secretary, as matter of policy, volunteers assistance to establish well groundedness, then "grave questions of due process" could arise if there were disparate treatment between similarly situated claimants). Therefore, we hold that the Board performed a de facto reopening of the appellant's pes planus claim, and we now hold that this de facto reopening was not in error.

### C. Review Under "Clearly Erroneous" Standard

■ Once a claim has been correctly reopened, the Court reviews the Board's findings with respect to such reopening under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4); *Kightly v. Brown,* 6 Vet.App. 200, 206 (1994) (Court remanded for reasons or bases where Board in effect reopened claim); *Stanton,* 5 Vet. App. at 567; *Gilbert,* 1 Vet.App. at 53. The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written state-ment of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc), *vacating in part on other grounds,* 2 Vet.App. 103 (1992); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet.App. at 57. A remand is necessary here because the Board did not provide reasons or bases for rejecting all of the appellant's favorable evidence nor did it address all of the relevant evidence.

The appellant's entrance examination report indicated that his pes planus was asymptomatic at that time. R. at 17. However, during service, the appellant complained on numerous occasions of painful feet, and he was treated for those complaints. R. at 21–24, 26–27, 30, 35–37. Indeed, in October 1943, the appellant's condition was characterized as third degree pes planus. R. at 24. If these symptoms indicate an increase in severity, then the presumption of aggravation would have attached. *See Townsend v. Derwinski,* 1 Vet.App. 408, 409–10 (1991) (where veteran's preexisting pes planus condition was noted to be minimal soon after induction but severe at separation, Court stated that the condition had increased in severity and held that presumption of aggravation had attached). Consequently, the Board would have been obligated to rebut the presumption of aggravation with "clear and unmistakable evidence demonstrat[ing] that the injury or disease existed before acceptance and enrollment and was not aggravated by such service." 38 C.F.R. § 1111; *see Laposky v. Brown,* 4 Vet.App. 331, 334 (1993); *Akins v. Derwinski,* 1 Vet. App. 228, 232 (1991); *see also Jensen v. Brown,* 19 F.3d 1413, 1417 (Fed.Cir.1994) (38 U.S.C. § 1153 creates rebuttable presumption of aggravation, not irrebuttable presumption of service connection), *reversing* 4 Vet.App. 304 (1993); *Williams v. Brown,* 8 Vet.App. 133, 135 (1995). This burden in-

cludes the requirement that there be "a *specific* finding that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153 (emphasis added); 38 C.F.R. § 3.306(a).

However, the record is not adequately developed on the issue of an increase in severity since the Board merely rejected the reports of complaints during service as being symptomatic of a temporary increase in severity. *Falzone*, BVA 93–___, at 5; R. at 7. This statement by the Board was conclusory. Significantly, the Board did not address the October 1943 notation that appears to refer to a more severe form of pes planus (third degree). The Court is unable to determine whether this in fact constitutes an increase in the severity of the appellant's disability or indicates a temporary worsening of symptoms. *See Hunt*, 1 Vet.App. at 296–97 (Court held that Board had plausible basis for finding that claimant's condition did not increase in disability during service where claimant experienced only temporary worsening of symptoms). Nevertheless, the responsibility for discussing in the first instance the evidence in light of the statutes and regulations and for providing reasons or bases for any findings thereupon rests with the Board, not the Court. *See* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 57. "In appeals of BVA decisions, this Court reviews fact determinations made by the Board and does not engage in de novo factfinding." *Landicho v. Brown*, 7 Vet.App. 42, 48 (1994) (citing, *inter alia*, 38 U.S.C. § 7261(a)(4), (c), and *Gilbert*, 1 Vet.App. at 53).

The inadequacy of the record is heightened by the inadequacy of the December 1992 VA orthopedic examination. *See Ardison v. Brown*, 6 Vet.App. 405, 407 (1994). The VA examination briefly discussed the appellant's history but did not articulate a precise relationship between his condition and his military service. *See Shoemaker v. Derwinski*, 3 Vet.App. 248, 254–55 (1992). On remand, the Board must rely on specific medical evidence that discusses the appellant's current condition and its relation, if any, to service as well as the significance, if any, of the complaints during service to the issue of aggravation. *See Colvin*, 1 Vet.App. at 175. If necessary, the Board will then be obligated to discuss in the first instance whether the presumption of aggravation has been sufficiently rebutted.

### D. Secretary's Argument Regarding Lack of Well–Grounded Claim

We note the Secretary's argument in his brief to the Court that the appellant's claim was not well grounded because the appellant lacks a *medical* statement linking his current pes planus condition (R. at 164) with his in-service condition. First, the correct issue is whether the appellant submitted new and material evidence to reopen the claim. *See also Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992) (new and material evidence is, by its nature, well grounded). Second, the Secretary's argument misconstrues the nature of evidence required for the type of condition involved in the appellant's claim. Under 38 U.S.C. § 5107(a), "a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). The type of evidence necessary to satisfy the well-groundedness requirement will depend on the nature of the condition and claim. For instance, "[w]here the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required." *Heuer v. Brown*, 7 Vet. App. 379, 384 (1995); *see Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). However, "where the determinative issue does not require medical expertise, lay testimony may suffice by itself." *Heuer*, 7 Vet.App. at 384; *see Harvey*, 6 Vet.App. at 393 (where claimant was describing sequence of observable events, her statements were sufficient to render claim well grounded). In the instant case, the appellant has described the observable flatness of his feet and the accompanying pain. Therefore, his own statements are competent as to the issues of continuity of pain since service and the observable flatness of his feet.

**406**

In the context of well-grounded-ness, where the determinative issue involves a medical determination, competent medical evidence is required. However, lay assertions of symptomatology or injury may suffice where the determinative issue is not medical in nature. *See Harvey*, 6 Vet.App. at 393; *see also Layno v. Brown*, 6 Vet.App. 465, 469–70 (1994) (lay testimony is competent only when it regards features or symptoms of injury or illness). Indeed, the Court has found a claim for functional loss due to pain to be well grounded based solely on a "veteran's repeated assertions ... of pain." *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991). Moreover, the Court has held that a veteran's statements that a service-connected condition had worsened over time were sufficient to render a claim for an increased disability rating well grounded. *Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992). The issue in this case, i.e., worsening of pes planus during service and continuity of symptomatology after service, is fundamentally no different from the situations analyzed in *Schafrath* and *Proscelle*.

Additionally, the record in this case also discloses that the appellant's condition changed from an asymptomatic one at entrance to a condition characterized as third degree pes planus during service. R. at 24. Furthermore, the appellant currently has been diagnosed with pes planus in December 1992. R. at 164. Therefore, the appellant's statements regarding pain, the in-service notation indicating a worsening of his pes planus, and the confirmed existence of the condition on the December 1992 VA examination are sufficient to render the appellant's claim well grounded.

### E. Claim for Secondary Service Connection for Varicose Veins

We note, however, that the Board's failure to adjudicate a claim for secondary service connection for varicose veins as being related to the pes planus is harmless error. Although the Board is obligated to liberally construe arguments raised during the claims adjudication process, here there was no "claim" to adjudicate. Unlike the appellant's claim for service connection for pes planus on the basis of aggravation, the appellant's argument that his varicose veins and resulting surgery are related to pes planus does require medical knowledge. Thus, the appellant did not submit a well-grounded claim for service connection for varicose veins.

### F. Non–Service–Connected Pension

Finally, we note that the appellant's case presents a possible claim for a non-service-connected pension. *See* 38 C.F.R. § 3.151(a) (1994); *Stanton*, 5 Vet.App. at 571; *Ferraro v. Derwinski*, 1 Vet.App. 326, 333 (1991); *see also* 38 U.S.C. § 1521. On his application seeking service connection for pes planus, the appellant specifically marked out the areas pertaining to non-service-connected pension and indicated in response to a question on the form that he was seeking a service-connected disability. R. at 54. However, later during the adjudication of his claim, the appellant indicated that "[a]ny small pension I may be entitled to would help me a great deal." R. at 176. On remand, the appellant will have the opportunity to clarify whether he is seeking only service-connected disability compensation or compensation and a non-service-connected pension.

### III. CONCLUSION

Accordingly, upon consideration of the record, the appellant's brief, and the Secretary's brief, the Court VACATES the September 1993 BVA decision and REMANDS the case for readjudication consistent with this opinion.