﻿Citation Nr: 18124190
Decision Date: 08/07/18 Archive Date: 08/06/18

DOCKET NO. 11-21 053A
DATE: August 7, 2018
ORDER
1. Entitlement to an initial rating in excess of 30 percent prior to January 30, 2015, for posttraumatic stress disorder (PTSD) and an initial rating in excess of 70 percent thereafter until June 23, 2016 is denied.
2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) on an extraschedular basis, prior to January 30, 2015 is denied.
FINDINGS OF FACT
1. Prior to January 30, 2015, the Veteran’s service-connected PTSD did not result in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. 
2. From January 30, 2015 to June 23, 2016 the Veteran’s service-connected PTSD did not cause total occupational and social impairment. 
3. The Veteran’s only service-connected disability is PTSD which has been rated 30 percent disabling from May 18, 2010; 70 percent disabling since August 30, 2015; and 100 percent disabling since June 23, 2016. 
4. The Veteran has a high school education and work experience as a longshoreman and as a truck driver. 
5. Prior to January 30, 2015 the Veteran’s only service-connected disability of PTSD did not cause the Veteran to be unable to obtain or retain substantially gainful employment. 
CONCLUSIONS OF LAW
1. The criteria for an initial rating in excess of 30 percent prior to January 30, 2015, for PTSD and for an initial rating in excess of 70 percent thereafter until June 23, 2016 have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. § 3.102, 4.3, 4.7, 4.21, 4.126, 4.130, Diagnostic Code 9411 (2017). 
2. The criteria for a TDIU rating prior to January 30, 2015 have not been met. 38 C.F.R. §§ 3.102, 4.16(b) (2017). 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active service from August 1969 to August 1971. 
Historically, an April 2011 rating decision granted service connection for PTSD, and assigned an initial 30 percent rating, effective May 18, 2010 (date of claim). 
In July 2014, a videoconference hearing was held before the undersigned. A transcript of the hearing is associated with the Veteran's claims file. 
In September 2014, the Board denied service connection for bilateral hearing loss and the issue of an initial rating in excess of 30 percent for PTSD was remanded for additional development. 
A February 2015 rating decision increased the initial rating assigned for service-connected PTSD to 70 percent, effective January 30, 2015 (date of VA examination). 
In October 2015 the Veteran filed a claim for a TDIU rating, i.e., VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability. 
A March 2016 rating decision granted a TDIU rating as of January 30, 2015, the date that the Veteran first met the schedular criteria under 38 C.F.R. § 4.16(a) for a TDIU rating on a schedular basis under 38 C.F.R. § 4.16(a). 
In June 2016 the Board remand the case for additional development. 
An October 2017 rating decision increased the 70 percent rating for PTSD to a schedular 100 percent rating effective June 23, 2016 (date of VA examination) and also awarded entitlement to Dependents’ Educational Assistance (DEA) benefits as of that date. 
Entered into VBMS in November 2017 was a decision (describing itself as an Advisory Opinion) from the VA Director of Compensation Service which denied entitlement to a TDIU rating on an extraschedular basis prior to January 30, 2015. See Wages v. McDonald, 27 Vet. App. 233 (2015) (the VA’s Director of Compensation Service decision as to entitlement to an extraschedular TDIU rating is “in essence the de facto [RO] decision” and does not constitute evidence, including opinion evidence, upon which the Board may rely or place any probative value).
Background
On VA psychiatric examination of July 21, 2010, the Veteran’s claim file was reviewed. It was reported that during service his work had included that of a longshoreman and a heavy vehicle operator. He recounted experiences in Vietnam. He began receiving VA outpatient treatment (VAOPT) in 2010 and was diagnosed in April 2010 with PTSD and had a Global Assessment of Functioning (GAF) score of 53. He was now stabilized with an anti-psychotic medication to deal with a marked amount of hypervigilance, occasional paranoia, temper problems, nightmares, and sleep disturbance. His past medical history was significant for obesity, erectile dysfunction, a history of left knee injury, eczema, tinnitus, decreased hearing, and hyperlipidemia. He had been married first from 1971 to 1991, and his second marriage had been from 1993 to 1998. He stated that his second wife did not like the way he acted. He drank and he worked all the time, but he stated that was how he coped with his PTSD. He had been living with his girlfriend for the past 4 years, and she was supportive of him. He liked to be isolated and away from others. 
The Veteran reported that he had worked as a truck driver for over 30 years. He was laid off a year and a half ago and was still collecting long term unemployment, which was recently renewed by legislation in the Congress. He had had great difficulty getting a job. He often preferred to work all the time, be isolated, and be by himself. The reason he had a lot of trouble finding more work was because of his health as well as temper problems and isolation from stress from his Vietnam war experiences. He reported that his PTSD symptoms had worsened since he did not work excessively anymore. 
The Veteran’s present psychiatric symptoms included intrusive thoughts and flashbacks, a lot of symptoms of hyperarousal, with sleep disturbance and nightmares. He was taking antipsychotics and antidepressants. He had a lot of social isolation and dysfunction. He used to over-drink alcohol until he quit in 1995. 
On the mental status examination, the Veteran was alert and fully oriented times. He was dressed in farmer overalls. As to his mood, he complained of some anxiety. He did not have actual panic attacks, because he was so avoidant in crowds that he would just leave. He denied being suicidal or homicidal. He had no history of suicide attempts. As to communication, he had no mania and no pressured speech. Also, he complained of hypervigilance and having temper problems around others. There was no evidence of a thoughts disorder, hallucinations or delusions. As to activities of daily living, he bathed on a regular basis. He was casually dressed. He liked to work out on his acreage and be alone. His dress and hygiene were casual but adequate. He paid his bills. He liked to hunt and engage in some isolative activities. He remembered 1 out of 3 words after 3 minutes. He could spell the word "world" forward and backward without a problem. 
The examiner reported that the Veteran had social dysfunction due to PTSD, having been twice divorced, and having in the past abused alcohol. Also, he had employment dysfunction due to his PTSD. While he had been gainfully employed for over 30 years, he was dysfunctional due to PTSD because he preferred to work long hours as of way of not dealing with others, which also contributed to his two divorces. He no longer abused alcohol to deal dysfunction with his PTSD. The diagnoses were PTSD, and alcohol dependence in remission, secondary to PTSD. His GAF score was now 55. 
On VA psychiatric examination of March 12, 2011, the Veteran’s claim file was reviewed. It was reported that there were no significant changes since his July 2010 examination. The Veteran reported sleeping better since being placed on Citalopram. He reported that he mood continued to be marked by irritability but much less depression. He slept 6 hours a night and his energy level was satisfactory. He reported having better concentration. He continued to live with his girlfriend of four years. He had a good relationship with his children and grandchildren. He still had little association with others, except for his family and girlfriend. He was unemployed as a truck driver, and while still looking for work to some degree, he was enjoying the increased time being unemployed because it allowed him to pursue leisure activities. He engaged in hunting and fishing, which he was doing very regularly and enjoying a great deal. He had inherited some money and hoped to use it use to tide him over until he qualified for social security benefits. 
On mental status examination the Veteran was casually dressed. His psychomotor activity was unremarkable. His speech was spontaneous, clear, and coherent. He was cooperative and friendly. His affect was appropriate. His attention was intact. While he was unable to perform serial 7s or spell a word forwards and backwards, he could repeat the days of week backwards quickly and accurate1y. He was fully oriented. His thought processes and thought content were unremarkable. He had no delusions or hallucinations and his judgment and insight were intact. Although he had had impaired sleep in the past, with his current medication he slept throughout the night. There was no inappropriate behavior and he interpreted proverbs appropriately. He did not have panic attacks, or homicidal or suicidal ideation. His impulse control was good and there had been no episodes of violence. He was able to maintain minimum personal hygiene. He had no problems with the activities of daily living. His remote, recent, and immediate memory were normal. His symptoms of PTSD were listed and he had had less frequent intrusive thoughts and avoidant symptoms. He reported that since his last examination (in July 2010) his symptoms of PTSD were much less intense and had substantially less impact on him. 
The examiner reported that the Veteran’s being unemployed was due to his being unable to find a new job and was not due to his psychiatric disorder. The diagnoses were chronic PTSD, and alcohol dependence in sustained and full remission. While there was some potential symptom overlap between the alcohol dependence and PTSD, because the alcohol dependence was in sustained remission (and per available history had been for years), the only active symptoms were attributable to PTSD. The examiner reported that the Veteran had continued to manifested symptoms of his PTSD, though these were much diminished in response to his ongoing treatment. This fact was reflected in his new GAF score of 68. In fact, the Veteran reported an overall improvement in functioning. His mood was improved, he was more energetic, and had better engagement in personal relationships and family roles. He was taking greater pleasure from recreation and leisure pursuits. His response to medication had led to marked improvement in his PTSD symptoms over the last 6 months. His PTSD symptoms were controlled with medication. 
On VA psychiatric examination on January 30, 2015, the Veteran’s VA electronic records were reviewed. An examiner reported that the best summary of the Veteran's level of occupational and social impairment was occupational and social impairment with reduced reliability and productivity. 
The Veteran reported that since his last examination (in March 2011) several incidents had exacerbated his PTSD. He had felt better at the 2011 examination but not too long afterwards his father became very sick and died. He found out his girlfriend had left him after she embezzled about $10,000.00 from his accounts and then embezzled about another $5,000.00. His sleep problems had gotten worse again and he had to pay back the money stolen from his father’s account. He now lived in a cabin on his property and his two sons were living in the main house. He reported that he tended to isolate himself to the cabin and to go hunting and fishing by himself. He had quit his last job 5 years ago, when working for Peterson Farms as a truck driver, following an altercation and had not worked since. 
The examiner noted that about a year ago the Veteran participated in a 10-week group therapy class, but other than that, over the past few years he had only attended quarterly psychiatry visits. There was a GAF score of 48, on January 4, 2013. The Veteran reported that it was difficult to attend treatment more often because he lived 90 miles away. He now took multiple medications for his mental health. The Veteran reported that he drank 6 beers and a pint of whiskey every evening, in order to get to sleep, which was still frequently fitful. More recent psychiatry notes suggested he was again doing better emotionally, but not as well as he was doing at last VA examination (in March 2011). He now reported having at least moderate difficulties with memory, and the examiner indicated that this might be due to, at least in part, the substance abuse and aging process. 
The Veteran’s symptoms of PTSD were listed and it was reported that he had depressed mood, anxiety, suspiciousness, and near-continuous panic or depression affecting the ability to function independently, appropriately and effectively. He also had chronic sleep impairment, and mild memory loss, such as forgetting names, directions or recent events. He had impairment of short- and long-term memory, for example, retention of only highly learned material, while forgetting to complete tasks. He had circumstantial, circumlocutory or stereotyped speech and difficulty in understanding complex commands. He had disturbances of motivation and mood. He had difficulty in establishing and maintaining effective work and social relationships. He had difficulty in adapting to stressful circumstances, including work or a worklike setting. He had suicidal ideation and neglect of personal appearance and hygiene. The examiner observed that the Veteran was somewhat unkempt, and had obvious difficulty remembering specific dates when seen for treatment but he was intact for memories that were quite vivid, meaningful or traumatic. He needed explanations about quite a few questions. He was capable of managing his financial affairs. 
The examiner stated that the Veteran appeared to have achieved a lessening of PTSD symptoms prior to the girlfriend's betrayal. However, if his girlfriend of 5 - 6 years really did embezzle his and his father's money around the time of his father's death, it was also quite likely to have aggravated his symptoms. Except for his statement about substance use, which seemed like it might be slightly exaggerated, his presentation and remarks appear fairly genuine. 
In VA Form 21-4192, Employment Information, in October 2015, as corrected by an employee of Peterson Farms, the Veteran had been employed at that business as a truck driver from December 2001 until March 26, 2010. 
In VA Form 21-8940, Application for Increased Compensation Based on Unemployability, the Veteran reported that his disability had affected his full-time employment and he had last worked in April 2008. He had become too disabled to work in April 2009. He had become too disabled to work in 42009. He had last worked for Peterson Farms as a truck driver, on a full-time basis. He reported that he had left his last job due to his disability. He had four years of high school education. 
A PTSD Disability Benefits Questionnaire (DBQ) reflects that when examined on January 5, 2016, the Veteran’s VA electronic records were reviewed and that it was reported that the Veteran’s oldest son moved into his trailer to help him by handling bills and paperwork, and reminding him to take his medication. He now had hypersomnia and suicidal thoughts. The best summary of the Veteran’s level of occupational and social impairment was occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. 
The Veteran reported that the last of his live-in girlfriends had embezzled funds from him and from his (deceased) father, about five years ago, and he had avoided women since then. He had not worked or looked for work. He was seen in the VA psychiatric clinic about every three months for medication review. He had not participated in any other treatment in the last year. There had been no psychiatric emergencies, suicide attempts, or hospitalizations. He now took only one psychotropic medication. He reported no behavioral problems that had negatively impacted himself or others since the last examination. At the time of the last examination, he was drinking beer or liquor every night to help him sleep. He reported that he had cut down considerably on his alcohol use and now only had an occasional beer. The change apparently had resulted from his concern over his son’s drinking and the urging of his mental health provider. He indicated he no longer used marijuana and had never used any other psychoactive substance. He reported that he had had considerably more difficulty with concentration and performing complex tasks in the past few months. On the other hand, he had had much less irritability and insomnia. The examiner suggested that the Veteran’s recent change in medication might be responsible for these changes. 
The Veteran’s symptoms of PTSD were listed. It was reported that the Veteran had a depressed mood, anxiety, and suspiciousness. He had near-continuous panic or depression affecting the ability to function independently, appropriately and effectively. He had mild memory loss, e.g., forgetting names, directions or recent events. He had impairment of short and long term memory, e.g., retention of only highly learned material, while forgetting to complete tasks. He had difficulty in understanding complex commands. He had impaired abstract thinking. He had disturbances of motivation and mood. He had difficulty in establishing and maintaining effective work and social relationships. He had difficult in adapting to stressful circumstances, including work or a work-like setting. He had suicidal ideation. 
The examiner observed that the Veteran often asked for questions to be repeated, apparently due to hearing difficulties. He was somewhat unkempt and his mood was somewhat depressed. His affect was appropriate to thought content. He was able to engage fairly well with the examiner. His thoughts were relevant and coherent, but rather simple and concrete. Short-term memory was impaired. The Veteran seemed able to perform most activities of daily living fairly well. For example, he could dress himself, prepare meals, and do laundry. However, his memory and concentration difficulties interfered with his ability to perform complex or detail-oriented tasks. He had a shop and used to do mechanical work, but he reported that he was not as able as he used to be at figuring out what to do. He maintained good relationships with family members and a few neighbors. He also went to the Legion Hall on occasions. However, he was suspicious of most people and became anxious when around strangers. He was able to function adequately within a limited sphere of activity, but had difficulty when he tried to go beyond this. He reported having infrequent thoughts of suicide, but had no intent to harm self and no plan. These appeared mostly passive rather than active thoughts. These were not sufficient to significantly impact social or vocational functioning. In the past he had more intense suicidal thoughts, but it had been at least a couple months (before his most recent change in medication) since he had an exacerbation of such thoughts. 
The examiner reported that the Veteran had a depressed mood, anxiety, suspiciousness, and near-continuous panic or depression affecting the ability to function independently, appropriately and effectively. He had mild memory loss, such as forgetting names, directions or recent events, impairment of short- and long-term memory, for example, retention of only highly learned material, while forgetting to complete tasks. He had difficulty in understanding complex commands and had impairment in abstract thinking. He had disturbances of motivation and mood. He had difficulty in establishing and maintaining effective work and social relationships. He had difficulty in adapting to stressful circumstances, including work or a work-like setting, and he had suicidal ideation. 
On VA psychiatric examination on June 23, 2016, an examiner reported that the best summary of the Veteran's level of occupational and social impairment was total occupational and social impairment. The Veteran had last worked 6 years ago as a truck driver. This job worked fairly well for him because he did not have to interact with people. He also worked on night shift. He was eventually fired because of difficulties. Previously, he had drank heavily but had had to cut down. He used it to help him relax or sleep. At one point, he had quit for 20 years but started back up again fairly recently at a much lower frequency. He started drinking again in response to increasing PTSD symptoms. 
The Veteran had a depressed mood, anxiety, and suspiciousness. He had near-continuous panic or depression affecting the ability to function independently, appropriately and effectively. He had chronic sleep impairment and mild memory loss, such as forgetting names, directions or recent events. He had a flattened affect and disturbances of motivation and mood. He had difficulty in establishing and maintaining effective work and social relationships. He had difficulty in adapting to stressful circumstances, including work or a worklike setting, and had suicidal ideation. He had impaired impulse control, such as unprovoked irritability with periods of violence. He had intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. 
On mental status examination the Veteran was alert and fully oriented. His speech was logical and goal directed. There was no psychosis or signs of a formal thought disorder. His mood was depressed and anxious. His affect was restricted with reactivity. He has periodic suicidal ideation but he denied intent or plan. He denied homicidal ideation, intent or plan. He was capable of managing his financial affairs.
General Rating Principles
Disability ratings are determined by the application of rating criteria VA’s Schedule for Rating Disabilities (38 C.F.R. Part 4) based on the average impairment of earning capacity, with separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7; see also 38 C.F.R. § 4.21. Current examination reports are viewed in light of the whole recorded history. See 38 C.F.R. §§ 4.1, 4.2, 4.10. Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). Also, the alleviating effects of medication may not be considered in schedular ratings unless explicitly provided in the applicable schedular rating criteria. Jones v. Shinseki, 26 Vet. App. 56, 63 (2012). 
PTSD
The Veteran's PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411 which uses a general rating formula for the evaluation of mental disorders. Under 38 C.F.R. § 4.126 (a) and (b) consideration is given to the frequency, severity, and duration of psychiatric symptoms as well as the length and capacity for adjustment during periods of remission. While consideration is given to the extent of social impairment, a psychiatric rating will not be assigned solely on the basis of social impairment. 
Under Diagnostic Code (DC) 9411 (PTSD), a 30 percent rating is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactory, with routine behavior, self care, and conversation normal), due to such symptoms as depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; or mild memory loss (such as forgetting names, directions, recent events). Id. 
A 50 percent rating is warranted where the disorder is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks (more than once a week); difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 
A 70 percent rating contemplates occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. 
“VA did not include in the criteria for a 70% evaluation the risk of actual self-harm. In fact, to the extent that risk of self-harm is expressly mentioned in § 4.130 at all, it is referenced in the criteria for a 100% evaluation as ‘persistent danger of hurting self, a symptom VA deemed to be typically associated with total occupational and social impairment. 38 C.F.R. § 4.130.” However, VA adjudicators are not “absolutely prohibited from considering [] risk of self-harm in assessing [a] level of occupational and social impairment” but there must be a differentiation between suicidal ideation, which is generally indicative of a 70% evaluation, and a risk of self-harm, the persistent danger of which is generally indicative of a 100% evaluation. Bankhead, slip op. at 12. 
A total schedular rating of 100 percent is warranted when the disorder results in total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of mental and personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.
When determining the appropriate disability evaluation to assign, the Board's primary consideration is a veteran's symptoms, but it must also consider how those symptoms impact a veteran's occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term 'such as' in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to award a specific rating. Mauerhan, 16 Vet. App. at 442; see also Sellers v. Principi, 372 F.3d 1318, 1326-27 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran's impairment must be 'due to' those symptoms, a veteran may only qualify for a given disability by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118. The United States Court of Appeals for the Federal Circuit (Federal Circuit) in Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-117 (Fed. Cir. 2013), however, noted the "symptom-driven nature" of the General Rating Formula, observed that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." 
The Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) was revised to the DSM-5 to remove consideration of Global Assessment of Functioning (GAF) scores. In Golden v. Shulkin, No. 16-1208, slip op. at 1 (U.S. Vet. App. Feb. 23, 2018) the United States Court of Appeals for Veterans Claims (Court) addressed the question of “ whether the Board may use Global Assessment of Functioning (GAF) scores when assigning a disability rating for psychiatric claims where the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (2013) (DSM-5) applies” and held that it was error to use “GAF scores to assign a psychiatric rating in cases where the DSM-5 applies” (which is to appeals certified to the Board on or after August 4, 2014). Golden, No. 16-1208, slip op. at 4 and 5 (U.S. Vet. App. Feb. 23, 2018). 
Here, the appeal was certified for appellate review in August 2012, prior to August 4, 2014 and prior to the first Board decision in September 2014. Thus, the Veteran’s GAF scores may be considered. 
The Global Assessment of Functioning Scale (GAF) “is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).” Richard v. Brown, 9 Vet. App. 266, 267 (1996). 

A GAF score of 61 to 70 indicates that the examinee has some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functions pretty well with some meaningful interpersonal relationships. A GAF score of 51 to 60 indicates that the examinee has moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with co-workers). 
The Board must determine whether the weight of the evidence supports each claim or is in relative equipoise, with the appellant prevailing in either event. However, if the weight of the evidence is against the appellant’s claim, the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.7; Gilbert v. Derwinski 1 Vet. App. 49 (1990).

1. Entitlement to an initial rating in excess of 30 percent prior to January 30, 2015, and an initial rating in excess of 70 percent thereafter until June 23, 2016
An initial rating in excess of 30 percent prior to January 30, 2015
Initially, the Board notes that the Veteran’s use of medication has helped to control some of his symptoms. Because this is contemplated in a 10 percent disability rating, it may be considered with respect to any possible entitlement to a higher rating. See Jones, 26 Vet. App. at 63 (2012). The evidence shows that the Veteran does have some anxiety and depression, sleep disturbance, as well as panic attacks. This set of symptoms is contemplated in the current 30 percent rating assigned prior to January 30, 2015.
However, the evidence is simply not persuasive in establishing that prior to January 30, 2015, he had impaired memory as to result in retention of only highly learned material or forgetting to complete tasks. The 30 percent rating assigned prior to January 30, 2015, contemplated mild memory impairment. 
Also, during the relevant time frame, there was no impairment in the Veteran’s ability to communicate, including no circumstantial, circumlocutory, or stereotyped speech. Likewise, the evidence did not demonstrate that he had impairment in abstract thinking or in understanding complex commands. Similarly, he did not have panic attacks of at least once per week or impairment of judgement, motivation or mood of such extent as to cause difficulty in establishing and maintaining effective work and social relationships in light of the evidence that he has good family relationships, maintains an adequate social life. 
Moreover, while the Veteran’s GAF score in 2010 of 55 suggests moderate impairment, and the GAF score in 2011 of 68 suggests only mild impairment. And this is consistent with the overall improvement in his psychiatric disability after he began taking medication. On mental status examinations in 2010 and 2011, the Veteran has displayed orientation as to place and time. The Veteran has also never required psychiatric hospitalization. 
Accordingly, the Board finds that the preponderance of the evidence is against the claim of entitlement to the assignment of a disability rating in excess of 30 percent for PTSD prior to January 20, 2015. In reaching this decision, the Board has considered the doctrine of reasonable doubt but finds that the preponderance of the evidence is against the Veteran’s claim and, so, that doctrine is not for application. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
An initial rating in excess of 70 percent from January 30, 2015 until June 23, 2016
A higher, 100 percent rating is not warranted in this case from January 30, 2015 until June 23, 2016 because the pathology due to PTSD during that time frame did not more nearly approximated the total social and occupational impairment represented by the criteria for a 100 percent rating. During the relevant time period, the evidence does not suggest, much less establish, that he has had gross impairment in thought processes or communication. He had not been a persistent danger of hurting self or others. He had not had persistent delusions or hallucinations and did not displayed grossly inappropriate behavior. Moreover, he has not been intermittently unable to perform activities of daily living (including maintenance of mental and personal hygiene). He did not display disorientation to time or memory loss for names of close relatives, own occupation, or his own name. 
Accordingly, the Board finds that the preponderance of the evidence is against finding that the PTSD warranted an initial rating in excess of 30 percent prior to January 30, 2015, and an initial rating in excess of 70 percent thereafter until June 23, 2016. 
2. TDIU prior to January 30, 2015
Without regard to advancing age or impairment due to nonservice-connected disabilities, if the schedular rating is less than total, a total disability evaluation can be assigned based on individual unemployability if a veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disability(ies), provided that he has one service- connected disability rated at 60 percent or higher; or two or more service-connected disabilities, with one disability rated at 40 percent or higher and the combined rating is 70 percent or higher. The existence or degree of nonservice-connected disabilities will be disregarded if the above-stated percentage requirements are met and the evaluator determines that the service- connected disabilities render him incapable of substantial gainful employment. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 
Here, the Veteran has been assigned a TDIU rating as of the date that he first met the schedular criteria in 38 C.F.R. § 4.16(a), i.e., as of January 30, 2015, by virtue of the assignment of a 70 percent disability rating for his only service-connected disorder of PTSD. 
If a veteran fails to meet the percentage standards set forth in 38 C.F.R. § 4.16(a) but is unemployable by reason of service-connected disabilities, the RO should submit the claim to the Director for extraschedular consideration. 38 C.F.R. § 4.16(b). 
In evaluating total disability, full consideration must be given to unusual physical or mental effects in individual cases, to peculiar effects of occupational activities, to defects in physical or mental endowment preventing the usual amount of success in overcoming the handicap of disability and to the effects of combinations of disability. 38 C.F.R. § 4.15.
A substantially gainful occupation–i.e., one that provides annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the veteran actually works and without regard to the veteran's earned annual income, is employment which constitutes a substantially gainful occupation and thus "actual employability." Faust v. West, 13 Vet. App. 342, 355-56 (2000) (finding that this definition for substantially gainful employment or substantially gainful occupation was limited to the facts of that particular case). 
Substantially gainful employment is synonymous with substantially gainful occupation and regardless of whether employed or not, a Veteran is precluded from substantially gainful employment when unable to secure or follow an occupation capable of producing income that is more than marginal, i.e., income that exceeds the poverty threshold for one person, or based on the facts of an individual case. In other words, a TDIU is not warranted if able to engage in more than marginal employment. Ortiz-Valles v. McDonald, 28 Vet. App. 65 (2016). 
If, as here prior to January 30, 2015, a veteran does not meet the requirements for a TDIU rating under 38 C.F.R. § 4.16(b), a TDIU rating may be assigned on an extraschedular basis under 38 C.F.R. § 4.16(b). 
In Wages v. McDonald, No. 13–2694, slip op. at 3 and 6 (U.S. Vet. App. Jan 23, 2015); 2015 WL 293616 (Vet.App.) the Court found that while the RO and Board may not award an extraschedular TDIU rating in the first instance under 38 C.F.R. § 4.16(b), as this must first be done by the Director of Compensation and Pension and such a decision on a specific case is “in essence the de facto [RO] decision” and under 38 U.S.C. § 511(a) the Director’s decision is not binding on the Board. Moreover, the Director’s decision does not constitute evidence, including opinion evidence, upon which the Board may rely or place any probative value. On the other hand, the Board may be persuaded that the analysis of the Director’s decision is correct in the specific circumstances of an individual case. 
Analysis
To the extent that the TDIU analysis involves whether a veteran could at the relevant time perform the physical and mental acts required by employment, see Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993), veterans are qualified to render probative evidence on that issue, see Falzone v. Brown, 8 Vet. App. 398, 403 (1995) (veteran is competent to testify as to observable medical conditions); see also Geib, 733 F.3d at 1354 ("neither the statute nor the relevant regulations require the combined effect [of disabilities] to be assessed by a medical expert").
Here, the Veteran has been in receipt of a schedular TDIU rating since January 30, 2015, and the dispositive matter is whether he should be granted a TDIU rating prior to that time on an extraschedular basis under 38 C.F.R. § 4.16(b).
The RO referred the case to VA’s Director of Compensation Services and the Director rendered a decision denying extraschedular entitlement. That decision stated that: 
The Veteran claimed TDIU in October 2015 citing PTSD as the reason he stopped working in April 2009 as a truck driver. 
The Veteran was service-connected for: post-traumatic stress disorder (PTSD) at 30 percent. 
Past medical treatment includes but not limited to: sinusitis, allergic rhinitis, chronic obstructive pulmonary disease, bronchitis, PTSD, tinea, hyperlipidemia, obesity, hearing loss, knee injury, and dyshidrotic eczema. VA outpatient treatment notes showed ongoing PTSD with a GAF of 48 in September 2011; and 50 in August 2011, November 2011, January 2012, August, and October 2013. 
VA examinations from July 2010 showed the Veteran reporting a history of PTSD from active military service. Psychiatric findings revealed the Veteran competent for VA purposes with a global assessment of functioning score (GAF) of 55. Social function was impaired with employment dysfunction. Capacity for improvement was good as he was involved in treatment. In March 2011 VA examination showed treatment for depressive symptoms and PTSD with a GAF of 68 and competent for VA purposes. The Veteran reported overall improved functioning. His mood is improved. He was more energetic - better engaged in personal relationships and family roles and taking greater pleasure from recreation and leisure pursuits. It was noted that the Veteran was not working as a truck driver because he couldn’t find a job. He contended that his unemployment was not due to mental disorder.
Based on the totality of evidence of record, extra-schedular entitlement to TDIU is not shown due to PTSD [nor was] the rating schedule [] shown to be inadequate at any time. The Veteran’s PTSD was consistently shown to be mild in nature with evidence of a depressed mood, and mild memory loss. A GAF score of 50 indicates serious social or occupational functioning. The Veteran is not shown to be unemployable under any circumstances as VA medical evidence in March 2011 indicated that the Veteran stopped working because he couldn’t find a job and denied that his unemployment was due to mental condition(s). There are several non-service-connected disabilities identified, which have not been differentiated from service-connected conditions (Cathell v. Brown). Therefore, since no service-connected disabilities are identified individually or collectively, as the sole reason for the Veteran’s unemployability (Blackburn v. Brown) TDIU is not warranted on an extra-schedular basis prior to January 2015.
The Board concurs with the decision of the VA’s Director of Compensation Service and particularly so because the VA rating examinations in July 2010 and March 2011 reflect that the Veteran continued to seek employment, although by the time of the latter examination he was not making a whole-hearted effort to find employment, after having been gainfully employed on a full-time basis for more than three decades. The 2011 VA psychiatric examination indicates that he was, is essence, beginning to enjoy a peaceful retirement. Indeed, this was essentially the conclusion of the March 2011 VA psychiatric examiner. 
Moreover, the psychiatric findings at the time of the aforementioned 2010 and 2011 VA psychiatric examinations establish that his PTSD was not of such severity as to preclude obtaining or retaining substantially gainful employment in keeping with his work experience as a truck driver with a high school education. 
Accordingly, prior to January 30, 2015, the Veteran did not meet the criteria for a TDIU rating on an extraschedular basis.
 
DEBORAH W. SINGLETON
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Department of Veterans Affairs